Rockingham
No. 98-475

## TOWN OF WINDHAM

v.

## LAWRENCE SAVINGS BANK

June 22, 2001

*Beaumont & Campbell, P.A.*, of Salem (*Bernard H. Campbell* on the brief and orally), for the plaintiff.

· *Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* and *Charles W. Grau* on the brief, and *Mr. Hilliard* orally), for the defendant.

DUGGAN, J. The defendant, Lawrence Savings Bank (bank), appeals from a Superior Court (*Galway*, J.) order ruling that it improperly conveyed a parcel of land before it received subdivision approval, and therefore was liable for a civil penalty of $500. *See* RSA 676:16 (1996) (prior to 1997 amendment). The plaintiff, Town of Windham (town), cross-appeals the trial court's order to the extent that it ruled the town was not entitled to an award of attorney's fees. *See id.* We affirm.

In February 1986, the Villages of Windham Limited Partnership (developer) filed an application with the Windham Planning and Zoning Board (planning board) to develop a parcel of land in Windham. The planning board approved the parcel for condominium development. On May 14, 1986, the planning board chairman marked as approved a set of plans showing a sixteen-unit "Phase I" development on twenty-two acres, which was separated from 141 acres of "expandable land" for the development of future units. On August 27, 1986, the planning board approved a site plan showing development of eighty-four additional units spread over the expandable land.

In October of that year, by condominium declaration, the developer established the project as the Villages of Windham. The condominium declaration provided for the initial phase of sixteen units on twenty-two acres of the parcel; the remaining 141 acres were designated as "expandable land" for further development of more than 150 additional units. *See* RSA 356-B:3, XV, :16, III (1995). Although the Condominium Act refers to land of this type as "additional land," *see* RSA 356-B:16, III (d), we use the parties' designation of "expandable land."

In August 1987, the developer amended the declaration by submitting 4.4 acres of the expandable land to the condominium for the development of eleven additional units as "Phase II." In February 1988, the developer again amended the declaration by submitting 2.8 acres of the expandable land to the condominium for the development of five additional units as "Phase III." By submit-

ting the "Phase III" land to the condominium, the developer effectively divided the remaining expandable land into two separate noncontiguous plots. The developer designated the northern 48.3 acres as "expandable land A" and the southern 85.5 acres as "expandable land B." Site plans for Phases II and III were recorded in October 1987 and July 1988.

In February 1990, the bank foreclosed on the developer's mortgage and acquired title to all unsold units and to expandable lands A and B. On November 20, 1990, the bank permanently amended the condominium declaration. The amendment fixed the Villages of Windham condominium as forever consisting of the thirty-two units and submitted lands developed in Phases I, II and III, and released the expandable land from further development as part of the condominium.

The bank conveyed expandable land B to a third party in March 1996. Prior to this conveyance, the town had notified the bank that it did not consider the 1986 subdivision approvals as approving the further subdivision that created separate lots within the expandable land. Thus, the town considered it improper to convey expandable lands A or B as separate lots without first receiving subdivision approval. The bank conveyed expandable land B as a separate lot, and the town filed a petition for civil penalties because the bank never received subdivision approval. *See* RSA 676:16; TOWN OF WINDHAM SUBDIVISION REGULATIONS § 3.2 (1986). Following a hearing, the trial court ruled that "subdivision within the expandable land required separate Planning Board approval," and found the bank liable for a $500 civil penalty. The trial court denied the town's request for costs and attorney's fees. This appeal and cross-appeal followed.

In a land use case, we will "uphold the decision of the superior court unless [it] is not supported by the evidence or is legally erroneous." *Peabody v. Town of Windham*, 142 N.H. 488, 492 (1997) (brackets omitted). The issues on appeal present questions of law involving the interpretation of statutes and ordinances, which we review *de novo. See Appeal of Rainville*, 143 N.H. 624, 631 (1999); *Healey v. Town of New Durham*, 140 N.H. 232, 236 (1995). As we interpret the statutes and ordinances, we apply the traditional rules of statutory construction. *See Tausanovitch v. Town of Lyme*, 143 N.H. 144, 147 (1998). Accordingly, we look to the plain meaning of the words used, *see Healey*, 140 N.H. at 236, and we will not add words that the legislature did not see fit to include, *see Olson v. Town of Fitzwilliam*, 142 N.H. 339, 344 (1997).

A municipality may authorize its planning board to approve subdivision plans. *See* RSA 674:35 (1996); *Town of Tuftonboro v. Lakeside Colony, Inc.*, 119 N.H. 445, 448 (1979). State statute and the town's regulations define "subdivision" as "the division of the lot, tract, or parcel of land into 2 or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sale, rent, lease, condominium conveyance or building development." RSA 672:14, I (1996); TOWN OF WINDHAM SUBDIVISION REGULATIONS § 3.2. Further, both State and local law provide that a division of land held in common and subsequently partitioned among different owners shall be a subdivision. RSA 672:14, II (1996); TOWN OF WINDHAM SUBDIVISION REGULATIONS § 3.2. "No [property owner] shall make a subdivision . . . of any land within the Town of Windham or proceed with the improvement or sale of lots in a subdivision . . . unless and until a definitive plan of such a subdivision has been submitted to and approved by the Planning Board." TOWN OF WINDHAM SUBDIVISION REGULATIONS § 2.4 (1986). When a property owner transfers or sells land before a subdivision has been approved by the planning board, RSA 676:16 provides that the owner shall pay a $500 civil penalty for each lot or parcel transferred or sold without approval.

While subdivision regulations provide municipalities with the authority to control developers "to promote the orderly and planned growth of relatively undeveloped areas within a municipality," *Blevens v. Manchester*, 103 N.H. 284, 286 (1961) (citation omitted), the Condominium Act controls developers by limiting their power to declare real property interests created by condominium, a form of ownership. *See* RSA 356-B:7 (1995). A condominium is created when condominium instruments are recorded in the registry of deeds. *See* RSA 356-B:7, :11 (1995). The condominium declaration defines the rights as among the condominium owners, the condominium association and the developer. *See* RSA 356-B:7-:34 (1995). By declaring an expandable condominium, a developer may submit land to the condominium while reserving the right to expand the condominium by later adding more land. *See* RSA 356-B:16, III. Here, the Villages of Windham condominium declaration specifically provided:

2. The Declarant hereby reserves the right and option to expand the Condominium to more than a total of one hundred fifty (150) units.

3. The consent of the unit owners will not be required for any such expansion.
. . . .

5. If any additional land is added to the Condominium there are no limitations as to which portions of the Expandable Land must be added.

6. Portions of the Expandable Land may be added at different times and there are no limitations as to the boundaries of the portions of the Expandable Land which may be added.

All of these provisions conform to the requirements for an expandable condominium under the Condominium Act. *See* RSA 356-B:16, III. The defendant argues that because the Condominium Act allows the developer, by condominium declaration, limitless discretion in adding portions of the expandable land to the condominium, the town's subdivision regulations do not apply to the expandable land.

In February 1986, the developer filed an application for site plan review with the planning board. After holding public hearings, the planning board approved the site plan. The trial court found and the parties do not dispute that this approval included subdividing the property into two lots. One lot consisted of land to be developed as "Phase I" of the Villages of Windham condominium and the other consisted of the expandable land. *See* RSA 674:35 (1996).

We first address the bank's argument that it received *de facto*, omnibus subdivision approval for the expandable land when, in May 1986, the planning board approved the developer's site plans. The condominium instruments, filed in October 1986, and the Condominium Act permitted the developer to later submit portions of the expandable land to the condominium. Therefore, the bank contends, when Phases II and III were submitted to the Villages of Windham condominium, that land was effectively subdivided from the remaining expandable land and no further subdivision approval was necessary before conveying expandable land B to a third party.

We do not interpret the Condominium Act as providing an alternative procedure for subdivision approval. The defendant does not point to any provision within the Condominium Act which states that a condominium development that fully complies with the regulations set forth in the Condominium Act is not subject to local planning board approval. Rather, our review of the statute reveals the legislature fully intended that like any other developer, a condominium developer is expected to comply with all State and local law affecting development. *See* RSA 356-B:50, :51 (1995). In fact, as part of the registration requirement under the statute, a

developer must provide the attorney general with "[a] statement of the zoning, subdivision, and other governmental approvals, if any, affecting the condominium." RSA 356-B:51, I (m) (1995). The fact that the Condominium Act allowed the developer to reserve the right to transfer property to the condominium association from the expandable land did not relieve the developer of the obligation to obtain subdivision approval from the planning board. Moreover, the planning board's approval of a site plan showing a portion of the lot as "expandable land" did not relieve the developer of the obligation to obtain approval for further subdivision of that expandable land. Because the planning board's subdivision approval in 1986 did not provide omnibus subdivision approval to create separate lots within the expandable land, the developer could not further subdivide the expandable land into separate lots without first obtaining planning board approval. *See* TOWN OF WINDHAM SUBDIVISION REGULATIONS §§ 2.4, 3.2.

We next consider the bank's argument that even if the planning board did not grant omnibus subdivision approval for the expandable land, the town indicated its approval for subdividing the expandable land into separate lots when it failed to object as the developer submitted the land, developed in Phases II and III, to the Villages of Windham condominium association. The planning board's initial approval of the project was based on a set of plans that showed sixteen units on twenty-two acres and the remainder as expandable land. The planning board, later, approved a site plan that showed eighty-four additional units spread over the expandable land. As Phases II and III were developed, the developer twice amended the condominium declaration. These amendments effectively transferred ownership of the land, dedicated to Phases II and III, to the condominium association. Thus, the development of Phases II and III subdivided the expandable land to the extent it divided the land for the purpose of sale or conveyance of the condominium units. *See Cohen v. Town of Henniker*, 134 N.H. 425, 427 (1991); *see also* RSA 672:14, I; TOWN OF WINDHAM SUBDIVISION REGULATIONS § 3.2. To the extent that this subdivision of the property for condominium conveyance also created expandable lands A and B as separate lots, however, it was done without planning board approval.

None of the site plans indicate that the developer intended the property to be developed for any purpose other than the condominium. Prior to submitting Phases II and III to the condominium, the developer did not present an application to subdivide the expand-

able land into separate lots. The site plans that were approved by the planning board did not contain internal lines designating what would become Phases II and III or that the expandable land would be divided into two separate lots. In fact, members of the planning board testified that during their consideration of the site plans, they did not believe any phase line would subdivide the expandable land into separate lots that could then be conveyed. The record supports the trial court's finding that the planning board did not effectively approve the new lot lines created when the developer amended the condominium declaration submitting Phases II and III to the condominium association. *See* TOWN OF WINDHAM SUBDIVISION REGULATIONS § 2.4.

 The bank contends that this case is analogous to *Keene v. Town of Meredith*, 119 N.H. 379, 380 (1979), in which we rejected the town's efforts to block the sale of one of two tracts of land owned by the plaintiff. We held that because the tracts were separated by a road and treated by the town as separate, there was no division of a lot but a sale of one distinct parcel. *See id.* Here, the expandable lands are not separated from the other lands by a road or any boundary except that which the developer established when he submitted land to the condominium. Further, the planning board approved a plan that designated the expandable land as a single parcel and never treated the phases or expandable lands A and B as distinct parcels. Therefore, we agree with the trial court's conclusion that the bank conveyed expandable land B as a separate lot prior to receiving planning board subdivision approval in violation of RSA 676:16.

In its cross-appeal, the town argues the trial court erred in denying attorney's fees under RSA 676:16. RSA 676:16 provides, in relevant part, that in an "action to recover a penalty, the prevailing party may recover reasonable court costs and attorney's fees as may be ordered by the court." The trial court denied the town's request for attorney's fees because "no bad faith [was] claimed, and the parties acknowledge that their primary purpose in pursuing this case was not simply the question of the $500.00 penalty, but much more importantly, the question of the status of Expandable Land A, which has not been conveyed." "We will not overturn the trial court's decision concerning attorney's fees absent an abuse of discretion." *White v. Francoeur*, 138 N.H. 307, 310 (1994). "In applying the abuse of discretion standard, we look for some support in the record for the trial court's decision, and keep in mind the

tremendous deference given to a lower court's decision on attorney's fees." *Town of Swanzey v. Liebeler*, 140 N.H. 760, 765 (1996) (quotations omitted).

■ The town correctly asserts that the trial court had the power to grant attorney's fees under the specific statutory authorization provided in RSA 676:16. The town also correctly states that RSA 676:16 does not require a finding of bad faith before awarding attorney's fees. We do not agree, however, with the town's assertion that the trial court required a finding of "bad faith."

RSA 676:16 states that a party *may* recover reasonable court costs and attorney's fees, and therefore does not mandate an award of attorney's fees to the prevailing party. *See also Town of Swanzey*, 140 N.H. at 764. Nothing in the language of the statute limits the factors the trial judge may consider in determining whether to award attorney's fees.

■ The trial court's order indicates that it considered a number of factors in determining whether to award attorney's fees including: (1) whether the town alleged that the bank acted in bad faith; (2) the relative merits of the parties' positions; and (3) the true purpose of the litigation. First, the trial judge specifically asked the town's counsel whether the town was arguing that "there was bad faith here," to which counsel responded "no." Further, as evidenced by the thoughtful analysis in the six-page order, the trial court did not find that the bank's argument was completely without merit. Finally, the trial court considered the purpose of the litigation. The petition was filed as an enforcement proceeding alleging that the property had been conveyed without subdivision approval. By the time of the hearing, however, the town had approved subdivision of expandable land B as a separate lot. In recognizing that the litigation went beyond an enforcement proceeding, the court specifically noted that the "primary purpose in pursuing this case was not simply the question of the $500.00 penalty, but much more importantly, the question of the status of Expandable Land A, which has not been conveyed." Accordingly, we conclude that the trial court did not abuse its discretion when it declined to award attorney's fees.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.