Belknap
No. 99-760

CLARICE NEUMANN

v.

VILLAGE OF WINNIPESAUKEE TIMESHARE OWNERS' ASSOCIATION, INC.

October 29, 2001

*Hebert & Uchida, P.L.L.C.*, of Concord (*Richard Y. Uchida* on the brief and orally), for the plaintiff.

*Martin, Lord & Osman, P.A.*, of Laconia (*Benette Pizzimenti* on the brief and orally), for the defendant.

NADEAU, J. The plaintiff, Clarice Neumann, appeals the Trial Court's (*Smukler*, J.) rulings in her equity action challenging the voting practices of the defendant, Village of Winnipesaukee Timeshare Owners' Association, Inc. (VWTOA). We affirm.

The following facts were either found by the trial court to be undisputed for purposes of the parties' cross-motions for summary judgment, or are supported by the record. The "Village at Winnipesaukee" is a condominium development in Laconia created in 1974 and consisting of 180 condominium units. In 1981, thirty-five of the 180 condominiums were declared subject to timeshare ownership in a "Supplemental Declaration of Covenants and Restrictions."

VWTOA is a voluntary corporation organized under RSA chapter 292 (1999 & Supp. 2000), and is the owners' association for the holders of timeshare interests in the thirty-five timeshare condominiums. VWTOA has a board of nine directors, who are elected by vote of VWTOA's members. The plaintiff brought this action to challenge votes taken at VWTOA meetings held on December 7, 1997, August 19, 1998, and March 27, 1999. The plaintiff also sought access to VWTOA's membership list and financial records. The trial court granted the plaintiff access to VWTOA's financial records and the right to communicate with other members through VWTOA, but ruled in VWTOA's favor on all other issues.

On appeal, the plaintiff argues that the trial court erred in: (1) exempting VWTOA from RSA 356-B:39 (1995); (2) denying the plaintiff a hearing to introduce evidence of proxy voting and solicitation abuses; (3) upholding the board's authority to exercise the votes of absent members; (4) upholding the voting of proxies to defeat a motion by the members physically present to adjourn the March 27, 1999 meeting; and (5) ruling that the plaintiff did not have the right to physical possession of the VWTOA membership list.

The first question before us is whether RSA 356-B:39, which governs the use of proxies, applies to VWTOA. RSA chapter 356-B, known as the

"Condominium Act," governs all condominiums and condominium projects and supersedes the New Hampshire Unit Ownership of Real Property Act, RSA chapter 479-A, under which the Village at Winnipesaukee was created. *See* RSA 356-B:1, :2 (1995). Nevertheless, RSA 356-B:2, I, provides in part:

> This chapter shall not be construed to affect the validity of any provision of any condominium instrument recorded prior to September 10, 1977. Nor shall this chapter, except as set forth in paragraphs II and III, be deemed to apply to any real estate, or interest therein, submitted to the provisions of RSA 479-A prior to September 10, 1977.

Paragraphs II and III of RSA 356-B:2, in turn, provide that subdivision I (which consists of RSA 356-B:2-:6) and subdivision IV (which consists of RSA 356-B:48-:69) shall apply to: (1) offers or dispositions, made on or after November 1, 1981, of timesharing interests in condominiums created under RSA chapter 479-A; and (2) amendments after September 10, 1977, to previously recorded condominium instruments for the purpose of creating ten or more additional units. RSA 356-B:2, II, III.

The trial court, noting that the condominium units were created on August 7, 1974, and changed to timeshare units on July 21, 1981, held that "[t]hese cutoff dates are before the statutory cutoffs created by the legislature" and, therefore, "[u]nder the plain language of the statute, RSA 356-B does not apply to the respondent organization." The trial court did not explicitly deal with RSA 356-B:2, III, which applies to amendments of condominium instruments after September 10, 1977, to add ten or more units. Thus, the plaintiff contends that the trial court erred, pointing out "the timeshare units at issue in this case were established after September 10, 1977."

 The plaintiff's argument fails because the timeshare interests created in 1981 are not "units" under the statute. The definition of "time sharing interest" clarifies that "unit" refers to a physical space. "Time sharing interest" is defined in part as "the exclusive right to occupy one or more *units* for less than 60 days each year." RSA 356-B:3, XXVIII (1995) (emphasis added). Thus, since a timesharing interest is not itself a "unit" but is an ownership right in a unit, the supplemental declaration to create timeshare interests in existing units did not add units to the condominium project. *See Unif. Condominium Act* § 1-103 comment 15 (1980), 7 (pt. II) U.L.A. 220 (1997). Therefore, the exception in RSA 356-B:2, III does not apply. Furthermore, RSA 356-B:39 is not within subdivision I or IV of

RSA chapter 356-B. *See* RSA ch. 356-B. Accordingly, the trial court did not err in refusing to impose the requirements of RSA 356-B:39 on VWTOA.

The plaintiff nevertheless asserts her proxy abuse claims on general equitable principles. The trial court held generally that the board owed VWTOA members duties of care and loyalty and that "[these duties] might be breached if proxy votes were abused. However, the petitioner does not allege that a breach of these duties has occurred nor do the facts in this case support such a claim." The petitioner moved for reconsideration, arguing that she had in fact alleged proxy abuses, and requested that she be allowed to introduce evidence of such abuses at a hearing on the merits. The trial court denied the motion. The plaintiff argues that the trial court erred in refusing to allow her to present evidence of abuses such as unsigned proxies, proxies signed by persons other than the timeshare owner, and an instance of misleading and coercive proxy solicitation.

With respect to the December 7, 1997 and August 19, 1999 meetings, we agree with the trial court that the plaintiff failed to allege specific instances of proxy abuse in her bill in equity. The plaintiff merely alleged that the board failed to ensure that the proxies were valid, failed to retain them, and failed to allow her "to inspect [them] to determine whether [they] were valid and duly executed by eligible members."

With respect to the March 27, 1999 meeting, the plaintiff alleged in her amended bill in equity that members were coerced into giving proxies by improper threats in a letter from the timeshare management company. On appeal, however, the plaintiff fails to address the trial court's ruling that even if she had alleged proxy abuses, those claims failed on the merits. The plaintiff fails to note any disputed issue of material fact that would have precluded summary judgment, or any error by the trial court on a matter of law. *See* RSA 491:8-a, III (1997).

■ The plaintiff next argues that the trial court erred in upholding Article VI, Section 5 of the VWTOA bylaws (section 5), which provides in part:

> At any meeting wherein an Owner is not present and voting, either in person or by proxy, then his or her vote shall be deemed to go to the Board of Directors to be exercised as they deem fit. The Board of Directors, in its discretion, may exercise these votes to also establish a quorum for the transaction of business under Section 4 – Quorum.

Under RSA 292:6 (1999), a voluntary corporation's "bylaws may contain any provisions for the regulation and management of the affairs of the

corporation not inconsistent with the laws of the state or the articles of agreement." The authorization for the directors to vote the interests of absent members is plainly set forth in the bylaws, which bind VWTOA's members as a contract. *See* 18A AM. JUR. 2d *Corporations* § 325 (1985). Thus, VWTOA's members are presumed to have assented to the authorization. *See id.* We reject the plaintiff's argument that section 5 violates members' right to abstain from voting. Even if the members have such a "right," they may exercise it by giving a proxy with the appropriate instructions.

■ The plaintiff next argues that the trial court erred in upholding the March 27, 1999 election, which was held after a motion to adjourn was defeated by the board's exercise of proxies. The plaintiff argues that the bylaws allow only the members physically present to vote on adjournment.

Article VI, Section 6 of the bylaws provides that "[a]ny meeting of the Association may be adjourned from time to time to such place and time as may be determined by majority vote of the members present, whether a quorum be present or not, without notice other than the announcement at the meeting." Another section of the bylaws, however, describes a member as being "present and voting, either in person or by proxy." We agree with the trial court's conclusion that the bylaws, read as a whole to effectuate their stated purpose, treat a person giving a proxy as being "present" for the purpose of voting to adjourn a meeting.

■ Finally, the plaintiff argues that the trial court erred in denying her reasonable access to the VWTOA membership list. Specifically, the plaintiff challenges the court's denial of her request for physical possession of a list of the names, addresses and telephone numbers of VWTOA's members. We review the trial court's grant of equitable relief for an abuse of discretion. *See Geiss v. Bourassa,* 140 N.H. 629, 631 (1996).

The trial court recognized that RSA chapter 292 does not directly address the issue of access to a membership list. It held, however, that VWTOA members have an implied right under the bylaws and the applicable statutory scheme to communicate with each other to protect their interests and exercise other corporate rights. The court nevertheless recognized other members' valid privacy interests and therefore declined to grant the plaintiff unrestricted access to VWTOA's membership list. Instead, it ordered that the plaintiff could communicate with other members by delivering the communication in stamped envelopes to one of the directors, who must then address and mail them within fifteen days and certify his compliance with this order to the sender. On review of the

court's balancing of members' competing interests of access and privacy, we find no abuse.

*Affirmed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.