Rockingham
No. 2004-689

RYAN JAMES REALTY, LLC

v.

VILLAGES AT CHESTER CONDOMINIUM ASSOCIATION & a.

Argued: November 16, 2005
Opinion Issued: January 27, 2006

·*Cronin & Bisson, P.C.*, of Manchester (*John G. Cronin* and *John F. Bisson* on the brief, and *Mr. Cronin* orally), for the plaintiff.

*Mark E. Connelly*, of Concord, by brief and orally, for defendant Villages at Chester Condominium Association

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Dean B. Eggert* on the memorandum of law), for defendant Town of Chester.

GALWAY, J. The plaintiff, Ryan James Realty, LLC (Ryan), appeals the order of the Superior Court (*Morrill*, J.) granting summary judgment to the defendants, Villages of Chester Condominium Association (Association) and the Town of Chester (Town). The court ruled that the unit owners of the Villages of Chester Condominium own the disputed land. We reverse and remand.

The record supports the following facts. On March 11, 1987, the Villages of Chester, Limited Partnership (Declarant) recorded a declaration of condominium (Declaration) in the Rockingham County Registry of Deeds. This Declaration established the Villages at Chester Condominium and stated its desire to build a one-hundred-unit condominium on 209.93 acres. The Declaration provided for initial development of ten two-unit buildings, along with infrastructure such as roads and sewerage, all within the "submitted land." Exhibit A of the Declaration, entitled "Description of Submitted Land for Chester," states the metes and bounds of the submitted land, summarizing the description by reference to a parcel labeled "Phase I" on a site plan map attached to the Declaration. The map

shows that Phase I occupied approximately twenty-two and one-half acres. The Declaration reserved the right to expand development of the condominium on "expandable land." Exhibit B of the Declaration, entitled "Description of Expandable Land for Chester," describes by metes and bounds the 209.93 acres *excluding* the land identified in Exhibit A.

The Declaration states that any development beyond Phase I would require an amendment to the Declaration, and that the Declarant could record such an amendment no later than seven years from the date of the Declaration. On October 22, 1987, the Declarant recorded an amendment to initiate Phase II, which provided for construction of ten additional units and submission of approximately seven acres of the expandable land to the condominium. On May 18, 1988, the Declarant recorded an amendment to initiate Phase III, which provided for construction of ten additional units and submission of approximately seven and one-half acres from the expandable land to the condominium. Phases I, II, and III totaled approximately thirty-seven acres, leaving approximately 172.9 acres remaining in land designated as "expandable" on the site plan map.

First New Hampshire Mortgage Corporation held a mortgage on the property. After the Declarant submitted Phase III, First New Hampshire Mortgage foreclosed on its mortgage and deeded the remaining 172.9 acres to another developer. The property was conveyed multiple times, ending with a conveyance to Ryan in 1995.

In 2003, Ryan petitioned the superior court for a declaratory judgment regarding its right to further develop the 172.9 acres. The court first ordered the parties to submit motions for summary judgment on the issue of title. After considering the parties' motions, the court ruled that the Association, on behalf of the unit owners of the condominium, had title to the 172.9 acres. The court found that the Declarant had submitted all 209.93 acres to the condominium in the Declaration. The court stated that Ryan might have received title to the 172.9 acres if the Declarant had obtained approval from the Chester Zoning Board of Appeals to subdivide the property.

The sole question on appeal is who has title to the "disputed land," *i.e.*, the 172.9 acres remaining of the parcel after exclusion of Phases I, II, and III. Ryan argues that the trial court erroneously found that the Declarant submitted all 209.93 acres to the condominium. Secondly, Ryan argues that the trial court erred by indicating that subdivision approval was required to separate the land submitted to the condominium from the disputed land.

The defendants agree with the trial court that the Declarant submitted the entire parcel in the Declaration. They also argue that, because the Declarant did not formally subdivide the parcel, the Declarant did not

create an expandable condominium, and, therefore, submitted the entire parcel in the Declaration.

Since both parties moved for summary judgment and neither contends that there are any genuine issues of material fact, we review the trial court's application of law to the facts *de novo*. *See Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 35 (2005).

Entitled the "Condominium Act," RSA chapter 356-B (1995) (the Act) governs all condominiums and condominium projects. RSA 356-B:2; *Neumann v. Village of Winnipesaukee Timeshare Owners' Assoc.*, 147 N.H. 111, 113 (2001). The Act provides that a condominium is created by recording condominium instruments in the local registry of deeds. RSA 356-B:7, :11; *Town of Windham v. Lawrence Sav. Bank*, 146 N.H. 517, 520 (2001). The condominium instruments include a declaration of condominium, which defines the rights as among the condominium owners, the condominium association, and the developer. *Town of Windham*, 146 N.H. at 520. If the condominium is an "expandable condominium," the declaration must contain an explicit reservation of the option to add land to the condominium, a legal description of the "additional land," which is the land that may be added to the condominium, and numerous other provisions. RSA 356-B:16, III. "By declaring an expandable condominium, a developer may submit land to the condominium while reserving the right to expand the condominium by later adding more land." *Town of Windham*, 146 N.H. at 520. When a developer amends a condominium declaration to submit portions of the additional land to the condominium, the developer transfers ownership of those portions of land to the condominium. *Id.* at 522.

*I. Submission*

In the instant case, the trial court ruled that the Declarant submitted all 209.93 acres to the condominium. To support this assertion, the defendants cite the first page of the Declaration, which states:

> The Villages at Chester Limited Partnership is the sole owner of the land submitted herein ... by virtue of a deed [which transferred the entire 209.93 acres] .... The Declarant hereby submits the above land and buildings to the condominium form of ownership and use, in the manner provided by RSA Chapter 356-B.

The interpretation of a written document is a question of law, which we review *de novo*. *Frederick v. Frederick*, 141 N.H. 530, 531 (1996).

> When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract.

*Lawyers Title Ins. Corp. v. Groff*, 148 N.H. 333, 336-37 (2002) (citations and quotations omitted); *cf.* RSA 356-B:13 ("a construction conformable with the statute shall in all cases control over any construction inconsistent therewith").

The language that the trial court and the defendants reference comes only from one page of the Declaration. This first page states that the Declarant "submits the above land," which refers to the "land submitted herein." Though this language does not explicitly refer to the entire 209.93-acre parcel, and refers only to land submitted "herein," the defendants argue that this language submitted the entire parcel to the condominium. We disagree.

What the trial court and the defendants failed to consider in their interpretation is that the "land submitted herein" is defined in Exhibit A of the Declaration. Entitled "Description of Submitted Land for Chester," Exhibit A describes by metes and bounds an area that Exhibit A summarizes as "the parcel shown as Phase I" on the site plan map. Exhibit A, therefore, defines the term "submitted land" as used throughout the Declaration as the land designated as "Phase I." In contrast, Exhibit B, entitled "Description of Expandable Land for Chester," describes by metes and bounds the entire 209.93-acre parcel, *excluding* the parcel described in Exhibit A. Exhibits A and B clearly distinguish between the submitted land and the additional land.

■ We note that the Declarant filed two amendments to the Declaration, submitting the land designated as "Phase II" and "Phase III" to the condominium from the additional land. Had the Declarant submitted the entire 209.93 acres to the condominium in the Declaration, these subsequent amendments would have been unnecessary because the condominium owners would already have had title to the entire 209.93 acres. Interpreting the Declaration as a whole, we conclude that the land originally submitted in the Declaration was only that land designated as "Phase I," not the entire 209.93-acre parcel. The subsequent amendments submitted Phases II and III to the condominium. The remaining 172.9 acres were not submitted to the condominium.

*II. Subdivision*

Next, the defendants contend that, because the Declarant did not gain subdivision approval before submitting land to the condominium, the Declarant failed to create an expandable condominium and, therefore, submitted the entire 209.93-acre parcel in the Declaration. To support their argument, the defendants rely on *Town of Windham.* In that case, a bank held a mortgage on a parcel of land being developed as an expandable condominium. *Town of Windham*, 146 N.H. at 518-19. After the developer submitted portions of the parcel to the condominium, the bank foreclosed on its mortgage and acquired title to the portion of the parcel that had not been submitted. *Id.* at 519. The bank then conveyed part of the remaining land to a third party, without obtaining subdivision approval. *Id.* at 519. We held that the local planning board's initial subdivision approval for an expandable condominium did not authorize the bank to further subdivide the property for uses unrelated to that of an expandable condominium. *Id.* at 522. We stated:

> We do not interpret the Condominium Act as providing an alternative procedure for subdivision approval. . . . The fact that the Condominium Act allowed the developer to reserve the right to transfer property to the condominium association from the expandable land did not relieve the developer of the obligation to obtain subdivision approval from the planning board. Moreover, the planning board's approval of a site plan showing a portion of the lot as "expandable land" did not relieve the developer of the obligation to obtain approval for further subdivision of that expandable land.

*Id.* at 521-22. The defendants argue that our holding in *Town of Windham* means that the Declarant was required to obtain subdivision approval to create an expandable condominium.

Ryan argues that whether or not the Declarant should have subdivided the parcel before submitting part of it to the condominium does not determine ownership of the remaining acreage. The penalty for violating subdivision regulations is a fine pursuant to RSA 676:16 (1996), Ryan asserts, not a divestment of title to the property.

Our standard of review for interpretation of a statute is as follows:

> The interpretation of a statute is a question of law, which we review *de novo.* We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words

used. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include.

*Woodview Dev. Corp. v. Town of Pelham*, 152 N.H. 114, 116 (2005) (citations omitted).

RSA 676:16, entitled "Penalties for Transferring Lots in Unapproved Subdivisions," states:

> Any owner ... of any land located within a subdivision in a municipality that has adopted subdivision regulations who transfers or sells any land before a plat of the subdivision has been approved by the planning board ... shall forfeit and pay a civil penalty of $1,000 for each lot or parcel so transferred or sold .... The municipality may enjoin a transfer or sale which violates the provisions of this section ...."

RSA 676:16 (Supp. 2005).

The above statutory language clearly states that a municipality's remedy against one who transfers land without first obtaining the necessary subdivision approval is a fine or an injunction, neither of which the Town has sought in this case. In relying upon *Town of Windham*, the defendants failed to consider our discussion of the municipality's remedy in that case. We stated: "When a property owner transfers or sells land before a subdivision has been approved by the planning board, RSA 676:16 provides that the owner shall pay a $500 civil penalty for each lot or parcel transferred or sold without approval." *Town of Windham*, 146 N.H. at 520. Rather than voiding the bank's transfer to the third party, we affirmed the trial court's conclusion that the bank violated RSA 676:16 and was subject to a fine. *Id.* at 523.

The same reasoning applies to the instant case. Whether the Declarant was required to obtain subdivision approval before creating an expandable condominium does not affect title to the disputed land. RSA 676:16 provides that the penalty for failure to obtain appropriate subdivision approval is a civil fine for each parcel transferred or an injunction. Assuming without deciding that the Declarant needed subdivision approval to transfer its land in accordance with the creation of an expandable condominium, Ryan would still have title to the disputed land.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.