NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2013-491


RICHARD HOLT & a.

v.

GARY KEER & a.

GARY KEER & a.

v.

RICHARD HOLT & a.

Argued:  May 15, 2014
Opinion Issued:  January 13, 2015

Ducharme Law, P.L.L.C., of Portsmouth (Robert E. Ducharme on the brief and orally), for the petitioners.


Shaines & McEachern, PA, of Portsmouth (Paul McEachern on the brief and orally), for the respondents.


BASSETT, J.  The petitioners, Gary and Katherine Keer, appeal an order of the Superior Court (McHugh, J.) denying their motion for enforcement of the trial court's previous orders and for a finding of contempt.  The petitioners, the

owners of one of the four units in a condominium, filed the motion which alleged that the respondents, Richard Holt together with the owners of other units in the condominium, had unlawfully converted common area within the condominium to limited common area. We vacate and remand.

The following facts are taken from the record or are undisputed. This case involves a four-unit condominium located on Boston Avenue in Hampton, known as the Boston Four Condominium. The condominium was created in 1989 pursuant to a "Condominium Site Plan" and "Declaration of Condominium Ownership," both of which were recorded in the Rockingham County Registry of Deeds. The site plan depicts the four units and describes them as units "7, 7R, 9 & 9R Boston Avenue." Each unit is a free-standing residential building. The four units are arranged in a rectangle; units 7 and 9 are adjacent to one another bordering Boston Avenue, and units 7R and 9R are rear units located behind units 7 and 9 respectively. The condominium bylaws, recorded at the same time as the declaration, created the Boston Four Condominium Association to oversee the operations of the condominium property.

In addition to the residential buildings, the condominium also includes certain property around the four units that the declaration designates as either "common area" or "limited common area." Common area is property in which each unit owner has "an equal one-fourth (25%) undivided interest." The declaration provides that common area "[s]hall refer to all portions of the condominium other than the units." This includes a large portion of the outside property, walkways between units, as well as all utility lines serving the condominium. In contrast, limited common area consists of "the portion of the Common Area reserved for the exclusive use of . . . one or more, but less than all, of the units." Limited common area includes "doorsteps, porches, balconies, patios, and any other apparatus designed to serve a single unit, but located outside of the boundaries thereof . . . ." In addition, as to units 7, 7R, and 9R, each has its own parking space which is designated as limited common area. Each parking space is 9 feet by 18 feet, with boundaries delineated on the site plan.

The Keers purchased unit 7 in 1996. At that time, Richard and Jeannine Holt, then husband and wife, owned unit 7R. In 1997, after Richard and Jeannie Holt were divorced, Richard Holt became the sole owner of unit 7R. Since 2006, Richard Holt and his current wife, Rosanna Holt, have jointly owned unit 7R. In 1998, Richard Holt, together with Patricia Duquette, purchased unit 9R.

In the mid-2000s, the unit owners had several disagreements relating to the operation of the condominium. The issues included allocation of costs relating to the units' connection to new sewer lines, the propriety of additions Richard Holt had made to units 7R and 9R, and use of the common area. A

further disagreement arose because Richard Holt and his tenants had been parking two vehicles, one behind the other, in unit 9R's designated parking space, which caused one of the vehicles to encroach onto the common area.

Pursuant to a clause in the declaration requiring the arbitration of disputes between and/or among unit owners, the parties submitted their dispute to a neutral arbitrator. The Keers and the owner of unit 9, Frederick Guthrie, alleged that Richard Holt and Duquette had committed at least eleven violations of the condominium documents. Richard Holt and Duquette asserted two cross-claims against the Keers and Guthrie. Although the arbitrator denied most of the relief requested by the Keers and Guthrie, he also issued an order prohibiting Richard Holt or his tenants from parking two vehicles in the parking space reserved for unit 9R. On the cross-claims relating to sewer connection costs, the arbitrator ordered the Keers and Guthrie to pay their share of the cost to connect their units to the sewer system.

In September 2008, Richard Holt filed a petition in superior court seeking an order confirming the arbitrator's decision. The Keers and Guthrie filed a separate action in superior court appealing the arbitrator's decision. In February 2009, the trial court consolidated the two actions, ruled that a hearing was unnecessary, and granted Richard Holt's petition to confirm the arbitrator's decision. The trial court also denied the Keers' and Guthrie's appeal, finding that it was, in essence, a disagreement with the arbitrator's factual findings, which was not a proper basis for appealing the decision.

Following a hearing regarding the enforcement of the arbitrator's decision, the trial court issued a final order in which it observed that "[t]he operation of the Boston Four Condominiums is in complete disarray," and that, given that the Keers and Guthrie disagreed with Richard Holt, who then had an ownership interest in two of the four units, "on any issue the vote is two to two." The court again confirmed the arbitrator's award and "required [all parties] to comply with its terms." The court stated that a failure to comply with the arbitrator's decision "may lead to contempt findings by the Court."

In June 2010, Guthrie sold unit 9 to Kathleen Barnicoat. In December 2010, responding to a motion brought by the Keers, the trial court ordered Richard Holt to formally mark the area around unit 9R's parking space, so that its boundaries would be clear. In April 2011, after the Keers filed a motion for contempt arguing that Richard Holt had marked unit 9R's parking space in excess of twenty feet, the court ordered Richard Holt to delineate the area of the parking space in accordance with the site plan so that it did not exceed eighteen feet.

In 2012, Richard Holt and Duquette sold unit 9R to John and Elaine Banacos. On August 28, 2012, the condominium association recorded an

3

amendment to the declaration and bylaws (2012 amendment). This amendment changed the designation of certain condominium property from common area to limited common area, to the benefit of units 7R and 9R, and to the detriment of the remaining units. The 2012 amendment inserted the following sentence into the section describing the property designated as limited common area:

> The limited common areas contain the separate patio area behind and to the north of Unit 9R as "LCA Unit 9R", the separate patio behind and [to] the north of Unit 7R as "LCA Unit 7R", and; the walkway existing from the steps between units 9R and 7R extending from the steps to the north boundary as "LCA Units 9R and 7R."

In response to the amendment, the Keers filed a "Motion to Bring Forward to Enforce the Court Order/Contempt" with the trial court. In the motion, the Keers alleged numerous violations of the arbitrator's 2009 decision. The Keers also alleged that the 2012 amendment to the declaration infringed upon their equal undivided interest in the common area. Following a hearing, the trial court declined to rule on the issue stating that, with regard to the change in common area to limited common area, the hearing provided "very little information as to the specific areas in question" and, therefore, the court could not issue an order "with respect to what may be common area as opposed to limited common area without further evidence . . . ."

In April 2013, the condominium association recorded another amendment to the condominium instruments. This amendment inserted language into the declaration providing that written consent of three-fourths of the unit owners is sufficient to waive certain restrictive covenants. The amendment also inserted language into the bylaws that specifically allows condominium association meetings to take place if three-fourths of the unit owners attend.

In May 2013, the Keers filed a "Motion for Contempt/Enforce the Court Orders" with the trial court. Among other things, the Keers alleged that the 2012 amendment violated the terms of the Condominium Act, RSA ch. 356-B (2009) (Act). The Keers also alleged that both amendments to the declaration were not legally effective because they had not been signed by a majority of the owners. On May 31, 2013, the trial court denied the Keers' motion.

On June 13, 2013, the condominium association recorded a document entitled "Ratification and Adoption of Prior Amendments to Declaration and Bylaws of the Boston Four Condominium" signed by all the unit owners except the Keers. That same day, the Keers filed a motion to reconsider the denial of their motion for contempt with the trial court. The Keers again asserted that the 2012 amendment violated the Condominium Act. On June 27, 2013, the

4

trial court denied the motion to reconsider, stating that "the Keer[s] continue to file motions challenging the court's past decisions regarding the Condominium rules" and that it would not entertain any further motions on the issue. The Keers have appealed the trial court's orders of May 31, 2013, and June 27, 2013.

On appeal, the Keers argue that, because the arbitrator's 2009 decision requires unanimity of all unit owners in order to convert common area to limited common area, the remaining owners cannot amend the declaration to require less than unanimity. The Keers also argue that the 2012 amendment converting limited common area from common area violated the requirements of the Condominium Act and is therefore void. The respondents counter that the Keers failed to adequately preserve these issues for appeal. They also argue that the assignment of common area to limited common area was done in accordance with both the condominium instruments and the Condominium Act. We will first address the respondents' preservation argument.

Supreme Court Rule 16(3)(b) states, in part, that a petitioner's brief "shall make specific reference to the volume and page of the transcript where the issue [on appeal] was raised and where an objection was made, or to the pleading which raised the issue." Sup. Ct. R. 16(3)(b). It further provides that "[f]ailure to comply with this requirement shall be cause for the court to disregard or strike the brief in whole or in part." Id. This requirement reflects the general policy that "trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." Camire v. Gunstock Area Comm'n, 166 N.H. 374, 377 (2014) (quotation omitted).

The respondents argue that the Keers' brief fails to cite the specific pleading in which the issues on appeal were raised before the trial court and, therefore, that the Keers' brief should be stricken. In response, the Keers filed a reply brief with a supplemental appendix that included the motion for contempt that the Keers had filed with the trial court. The respondents did not object to the supplemental filing.

More importantly, the record establishes that the issues raised on appeal were, in fact, before the trial court. Here, issues concerning the propriety of the amendments to the condominium instruments were raised in the Keers' motion for contempt and again in their motion for reconsideration, and our acceptance order stated that these two orders were the only decisions at issue on appeal. Thus, we construe the respondents' argument not as asserting that the issues were not raised in the trial court, but rather, that the Keers initially failed to cite references to these issues having been raised in the trial court. To strike the Keers' brief under these circumstances would elevate form over substance. See State v. Burke, 153 N.H. 361, 362-63 (2006) ("Courts are least likely to dismiss an appeal . . . when briefing errors do not hamper the ability

to dispose of the appeal or otherwise interfere with their review." (quotation omitted)).  We decline to do so.  Accordingly, we conclude that the issues are preserved for our review.

Turning to the merits, we are mindful that this case comes to us on appeal from the trial court's denial of the Keers' motion for contempt.  "The contempt power is discretionary and the proper inquiry is not whether we would have found the respondent[s] in contempt, but whether the trial court unsustainably exercised its discretion in refusing to do so."  In the Matter of Giacomini & Giacomini, 150 N.H. 498, 500 (2004).  "To show an unsustainable exercise of discretion, [the Keers] must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of [their] case."  Lillie-Putz Trust v. Downeast Energy Corp., 160 N.H. 716, 723-24 (2010).

We read the trial court's orders, which denied the Keers' request for relief, as rejecting their argument that the 2012 amendment violated the Condominium Act.  Resolution of this issue requires that we interpret the terms of the Condominium Act.  "Statutory interpretation is a question of law that we review de novo."  EnergyNorth Natural Gas v. City of Concord, 164 N.H. 14, 16 (2012).  "We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole."  Id.  "In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Id.  "Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation."  Id.  "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme."  Appeal of Local Gov't Ctr., 165 N.H. 790, 804 (2014).  Additionally, "[w]e construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result."  Id.

The Condominium Act, RSA chapter 356-B, applies "to all condominiums and to all condominium projects" in New Hampshire.  RSA 356-B:2, I.  In order to create a condominium, certain "condominium instruments" must be recorded with the registry of deeds in the county where the condominium is located.  RSA 356-B:7, :11.  Condominium instruments include a declaration, which must describe or delineate all common area and limited common area, if any.  RSA 356-B:16, I(e)-(f).  RSA 356-B:3, II defines "common area" as "all portions of the condominium other than the units."  RSA 356-B:17 states, in relevant part, that a declaration may allocate each unit an equal undivided interest in the common area or a proportionate undivided interest based upon the size or value of the unit.  RSA 356-B:17, I-II.  In contrast, "limited common area" is defined in the Act as a "portion of the common area reserved for the exclusive use of those entitled to the use of one or more, but less than all, of the units."  RSA 356-B:3, XX.  Notably, these statutory definitions of common

area and limited common area appear verbatim in the definition section of the Boston Four Condominium declaration.

RSA 356-B:19, I, sets forth the limited circumstances in which limited common areas may be assigned:

> All assignments and reassignments of limited common areas shall be reflected by the condominium instruments. No limited common area shall be assigned or reassigned except in accordance with this chapter. No amendment to any condominium instrument shall alter any rights or obligations with respect to any limited common area <u>without the consent of all unit owners adversely affected thereby</u> as evidenced by their execution of such amendment, except to the extent that the condominium instruments expressly provided otherwise prior to the first assignment of that limited common area.

(Emphasis added.) Consequently, any assignment or reassignment of limited common area must both be expressly provided for in the condominium instruments, and comply with the terms of the Act. <u>Id</u>. In order to comply with RSA 356-B:19, I, an amendment to a condominium declaration cannot "alter any rights or obligations with respect to any limited common area" unless the unanimous consent of "all unit owners adversely affected" is obtained. <u>Id</u>.

In addition, the Act describes the limited circumstances under which an amendment to the declaration can convert common area to limited common area:

> A common area not previously assigned as a limited common area shall be so assigned only pursuant to RSA 356-B:16, I(f), except that limited common areas may be created or expanded pursuant to an amendment to the condominium instruments consented to by 2/3 of the votes in the unit owners association, or such higher percentage as the condominium instruments may provide, and then thereafter assigned as therein provided. . . . The creation or expansion of limited common areas pursuant to this paragraph shall not alter the amount of undivided interest in the common areas allocated to any unit.

RSA 356-B:19, III.

As the first clause of RSA 356-B:19, III specifies, an area designated as common area that has not previously been assigned to any individual unit as limited common area may be assigned as limited common area "only" pursuant to RSA 356-B:16, I(f). RSA 356-B:16, I(f) states that a condominium declaration must contain "a description or delineation of all common areas . . .

7

which may subsequently be assigned as limited common areas, together with a statement that they may be so assigned" and "a description of the method whereby any such assignments shall be made in accordance with RSA 356-B:19 . . . ." In this case, the Boston Four Condominium declaration does not specifically delineate any common area that may later be assigned as limited common area, nor does it contain any method by which common area could be assigned as limited common area.

The respondents argue that the 2012 amendment was lawfully made pursuant to the second clause of RSA 356-B:19, III, which states that limited common area "may be created or expanded" by an amendment to the condominium instruments "by 2/3 of the votes in the unit owners association, or such higher percentage as the condominium instruments may provide." The respondents contend that, because an amendment of the Boston Four Condominium declaration requires consent of only three of the four unit owners, the second clause of RSA 356-B:19, III empowers three unit owners to amend the declaration to designate existing common area to be limited common area. We disagree.

"[W]e do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme." Soraghan v. Mt. Cranmore Ski Resort, Inc., 152 N.H. 399, 405 (2005). "When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes." Id. Based upon the statute's plain language, the purpose of RSA 356-B:19 is to provide protection for condominium unit owners, relating to their interest in common areas and limited common areas. Interpreting the two-thirds exception found in RSA 356-B:19, III to create a blanket exception for the assignment of limited common area would conflict with, and, essentially nullify, the other protections contained in RSA 356-B:19. See Weare Land Use Ass'n v. Town of Weare, 153 N.H. 510, 511-12 (2006) ("The legislature will not be presumed to pass an act leading to an absurd result and nullifying, to an appreciable extent, the purpose of the statute.").

For example, interpreting the second clause of RSA 356-B:19, III as the respondents suggest creates a conflict with RSA 356-B:19, I. Converting common area to limited common area alters the rights and obligations of owners with respect to limited common area because new limited common area is created. See RSA 356-B:19, I. Contrary to the respondents' assertion, the broad statutory language that an amendment may not "alter any rights or obligations with respect to any limited common area" encompasses any alteration in rights, and is not limited to circumstances in which rights to limited common area are eliminated. Thus, any amendment to the condominium documents that changes a unit owner's rights to limited common area requires the unanimous consent of all "adversely affected" owners.

8

Because the Keers' right to use certain portions of the common area was extinguished by the assignment of those areas as limited common area, the 2012 amendment adversely affected the Keers, yet they did not consent to or execute the amendment as contemplated by RSA 356-B:19, I.

Additionally, we note that the respondents' interpretation of the second clause of RSA 356-B:19, III conflicts with the first clause of that same section. If a two-thirds majority were sufficient to reassign common area as limited common area, there would be no need for the declaration to identify, as required by the first clause of RSA 356-B:19, III, the specific common areas that could later be assigned as limited common area under RSA 356-B:16, I(f). Thus, the respondents' interpretation would, for all practical purposes, render the first clause of RSA 356-B:19, III meaningless. See Winnacunnet Coop. Sch. Dist. v. Town of Seabrook, 148 N.H. 519, 525-26 (2002) ("When construing a statute, we must give effect to all words in a statute and presume that the legislature did not enact superfluous or redundant words.").

Rather, we interpret RSA 356-B:19, III in harmony with RSA 356-B:19, I, which provides broad procedural protections for those owners adversely affected by an alteration of rights regarding limited common areas. However, as noted above, RSA 356-B:19, I also allows for situations in which the consent of adversely affected owners would not be required, so long as the condominium documents provided for this before assigning that limited common area. This exception is consonant with the first clause of RSA 356-B:19, III, which requires the condominium instruments to identify which common area not previously assigned as limited common area may be so assigned, and by what method.

The second clause of RSA 356-B:19, III allows limited common areas to be "created or expanded" pursuant to a two-thirds vote, or such higher percentage as provided in the condominium instruments. If, as discussed above, "created or expanded" limited common area were construed to include all assignment and reassignment of limited common areas, the second clause would directly conflict with RSA 356-B:19, I. Instead, we interpret the second clause of RSA 356-B:19, III to apply only when the creation or expansion of limited common area would not adversely affect unit owners under RSA 356-B:19, I. For instance, if a condominium association enters into an agreement to purchase additional land, it may choose to create new limited common area for particular unit owners. Because pre-existing common area and limited common area rights would remain unaffected, a unit owner not receiving additional limited common area would not be "adversely affected." Therefore, in the posited scenario, unanimous consent of all owners would not be required. This interpretation comports with the protective purpose of the statute, while, at the same time, it does not render other portions of RSA 356-B:19 a nullity. It is also consistent with the last sentence of RSA 356-B:19, III,

9

which specifically provides that creation of new limited common area cannot alter a unit owner's proportional percentage of common area.

Given our interpretation of paragraphs I and III of RSA 356-B:19, we hold that the 2012 amendment was unlawful. The 2012 amendment removed property previously designated as common area, and created limited common area in the "separate patio" areas behind units 9R and 7R, and in the walkway between units 9R and 7R. These assignments altered the owners' rights with respect to limited common area, and the Keers were adversely affected. See RSA 356-B:19, I. Because the assignment was made without the consent of the Keers, the 2012 amendment violated the Act. Given that we conclude that the 2012 amendment violated the terms of the Act, we need not address the Keers' argument that the 2012 amendment also violated the arbitrator's 2009 decision.

However, concluding that the 2012 amendment violated RSA 356-B:19 does not end our inquiry. We must also decide whether, in light of our ruling, the trial court's denial of the Keers' motion for contempt was an unsustainable exercise of discretion. To overturn the trial court's decision we must find that the Keers demonstrated that the trial court's ruling was "clearly untenable or unreasonable to the prejudice of [the Keers'] case." Lillie-Putz Trust, 160 N.H. at 723-24.

The Keers, representing themselves before the trial court, filed the motion for contempt arguing that the 2012 amendment violated their rights as unit owners. The motion also specifically alleges that the 2012 amendment violated RSA 356-B:19. In a one sentence order, the trial court denied the Keers' motion for contempt, noting that the change in unit ownership had shifted the balance of power in the condominium association. In their motion for reconsideration, the Keers again argued that the 2012 amendment violated RSA 356-B:19. In a summary order, the trial court denied the motion for reconsideration, stating that "the Keer[s] continue to file motions challenging the court's past decisions regarding the Condominium rules."

We conclude that the trial court either misconstrued the nature of the Keers' request, or that it simply failed to address their statutory claims. In fact, the Keers advanced several theories before the trial court, including an argument that the 2012 amendment violated the requirements of the Act with respect to assignment of limited common area. The basis for that argument was purely statutory and not predicated upon the terms of prior court orders regarding the condominium rules. Therefore, the trial court erred when it stated that the Keers were only challenging "the court's past decisions regarding the Condominium rules," and when it failed to address the Keers' statutory argument. Accordingly, we conclude that the trial court's decision is unsustainable. We, therefore, vacate the trial court's ruling on the Keers' motion for contempt and remand for consideration in light of our ruling. Cf. In

the Matter of Martel & Martel, 157 N.H. 53, 61 (2008) (vacating trial court's denial of a motion for contempt where trial court erred in a factual finding that formed the basis of contempt motion).

Finally, we note that, on appeal, the parties disagree as to the meaning and ramifications of the trial court's grant of the condominium association's motion to substitute parties. Given that we are remanding, we leave it to the trial court to determine, in the first instance, the effect of its own order.

Vacated and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.