Lynn, J.,
dissenting. Although I agree that the majority’s construction of the pertinent provisions of RSA chapter 195-A is a reasonable one, I am not *59 persuaded that its construction is consistent with how the legislature really intended the pertinent provisions to operate. Therefore, I respectfully dissent.
It is a fundamental principle of statutory construction that we “do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme.” Holt v. Keer, 167 N.H. 232, 241 (2015) (quotation omitted). “When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes.” Id. (quotation omitted). We presume that the legislature would not pass an act that would lead to an absurd or illogical result. See Simpson v. Young, 153 N.H. 471, 475 (2006).
RSA 195-A:14, V imposes upon a sending school district that withdraws during the term of an AREA plan a rental charge for the length of any outstanding school construction bond undertaken by the receiving school district. See RSA 195-A:14, V (2008) (a withdrawing sending district shall remain liable for a rental charge, as determined by the AREA agreement, for the length of any outstanding bond issue); IV(c) (2008) (a withdrawal plan shall include the liability of the withdrawing district for its share of any outstanding indebtedness in accordance with paragraph V). The statute creates an exception to the requirements of paragraph V, however, by allowing a sending district, upon receiving notice from the receiving district of a pending vote on a school construction bond, to withdraw from the AREA and, thereby, avoid incurring any obligation on that bond. See RSA 195-A:14, VI (2008) (“the sending district shall not be further obligated to any bonded indebtedness” if the voters in the sending district approve the withdrawal plan).
The majority accepts Dunbarton’s argument that because it terminated its relationship with the AREA plan as a result of the expiration of the plan, it is not a “withdrawing sending district” within the meaning of RSA 195-A:14, V, and thus is not liable under that section of the statute “for a rental charge . . . for the length of any outstanding bond issue.” RSA 195-A:14, V. Dunbarton concedes, however, that, even under this construction of the statute, it was liable to Goffstown for the “annual rental charge” specified in the AREA plan for the period of time during which the plan was in effect, that is, the period before the 2014 expiration of the agreement. See RSA 195-A:1, IX, X (2008) (defining the terms “tuition” and “annual rental charge per pupil,” respectively, for purposes of RSA chapter 195-A). Thus, if Dunbarton’s construction of the statute is correct, one has to assume that the legislature contemplated that, if, in response to notification from a receiving school district of its intention to incur bonded indebtedness that extends beyond the expiration of the existing AREA plan, a sending school *60 district takes no action, ie., does not initiate a withdrawal study pursuant to RSA 195-A:14, VI, the receiving district will be deemed to have accepted the risk that, at the expiration of the term of the plan, the receiving district will bear the entire cost of the bonded indebtedness for the period after the agreement expires. But if the legislature was willing to impose this risk upon receiving school districts, it is hard to imagine what purpose is served by imposing upon a sending district liability for the full term of the bond if the sending district withdraws before the term of the plan expires (although not in accordance with RSA 195-A:14, VI).
In short, no reason is apparent as to why the sending district’s withdrawal before the expiration of the plan should extend its liability beyond the expiration of the plan. Because such a withdrawal would not expose a receiving district to any greater post-expiration risk than would result from a sending district’s nonrenewal of the plan upon its expiration, there is no logical reason why the legislature would not have been content to impose liability for bonded indebtedness upon a withdrawing school district in this circumstance only for the period between the date of its withdrawal and the expiration of the term of the plan. To construe the statute in the fashion Dunbarton advocates, and the majority accepts, imposes, in effect, punitive consequences upon a sending district that withdraws — other than in compliance with RSA 195-A:14,VI — prior to the expiration of the term of the AREA plan. Although this construction of the statute does not seem to me to ring true, it is the only construction Dunbarton and the majority can place upon RSA 195-A:14, V if this statute is to be given any operative effect at all under their view of how the statutory scheme operates.
On the other hand, if — as I believe should be the case — the phrase “withdrawing sending district” is construed so as to include a sending school district that terminates its participation in the AREA plan for any reason, whether as a result of a mid-term withdrawal or the expiration of the term without renewal, then there is no need for the awkward construction of RSA 195-A: 14, V produced under the majority view. Under my reading, RSA 195-A: 14, V and VI operate in tandem. When a receiving district notifies a sending district of its intent to incur bonded indebtedness, the sending district has two choices: it can initiate a withdrawal study under section VI and, if it withdraws from the AREA, have no liability for such indebtedness after the withdrawal; or it can decline to withdraw pursuant to section VI, in which case it will remain liable for its share of any outstanding indebtedness for the length of the bond issue pursuant to section V. This construction does not seem to me to be unfair to sending school districts, as Dunbarton argues, since a sending district that receives notice of a proposed bond issue by a receiving district that contains a term *61 extending beyond the expiration of the current AREA plan can insist, as a condition of not exercising its withdrawal rights, that the terms of the plan be extended to cover the length of the bond.
I acknowledge that the construction of the statute I advocate, which treats the expiration of a plan as a “withdrawal” under RSA 195-A:14, V, places a different meaning on the term “withdrawal” than it is given under other subsections of RSA 195-A: 14 (2008) (no party asserts, for example, that before a plan can expire at the end of its term a “withdrawal” feasibility study must be conducted under RSA 195-A:14, III), and that this is arguably at odds with one of our rules of statutory construction. See Appeal of Denton, 147 N.H. 259, 260 (2001) (“Words used with plain meaning in one part of a statute are to be given the same meaning in other parts of the statute, unless a contrary intention is clearly shown.” (quotation omitted)). However such rules are intended as interpretative guideposts only, which must give way in the face of other indicia, as exists here, that such rules do not produce a logical outcome. See Ruel v. N.H. Real Estate Appraiser Bd., 163 N.H. 34, 39 (2011) (stating that the court will not interpret statutory language in a literal manner when such a reading would lead to an absurd or illogical result). Moreover, because, regardless of whether the reason is mid-term discontinuance or discontinuance at the end of the term, a sending school district that stops educating its children at the receiving district’s schools can logically be understood to have “withdrawn” from those schools, it is readily understandable that the legislature would use that term in a generic sense in RSA 195-A:14, V to capture both situations. See Webster’s Third New International Dictionary 2626 (unabridged ed. 2002) (defining “withdrawal” as “the act of drawing someone or something back from or out of a place or position”).
For the reasons stated above, I respectfully dissent. I also add one final point, as to which I feel confident both the majority and I agree: because the statutory provisions at issue are susceptible to two plausible but conflicting interpretations, the legislature should clarify their meaning so as to avoid uncertainty in this important area of law.