NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2021-0385

AZNH REVOCABLE TRUST & a.

v.

SPINNAKER COVE YACHT CLUB ASSOCIATION, INC.

Argued: November 15, 2022
Opinion Issued: August 3, 2023

John F. Sullivan, of Chandler, Arizona, on the brief and orally, for the plaintiffs.

Drummond Woodsum, of Manchester (Demetrio Aspiras on the memorandum of law and orally), for the defendant.

HICKS, J.  The plaintiffs, AZNH Revocable Trust (AZNH) and John F. Sullivan and Susan B. Sullivan, trustees, appeal an order of the Superior Court (O'Neill, J.) denying their request for preliminary injunctive relief against the defendant, Spinnaker Cove Yacht Club Association, Inc. (the Association), and granting the Association's motion to dismiss.  We affirm.

The following facts were alleged by the plaintiffs, recited in the trial court's order, or reflect the contents of documents in the record.  Spinnaker Cove Yacht Club (Spinnaker Cove) is a condominium consisting of ninety-one

units and common area. Ninety units are vehicle parking spaces and the remaining unit is a commercial warehouse building owned by a business engaging in boat sales, service, and storage. Appurtenant to each unit is the exclusive right to use a boat slip corresponding to that unit. The Association is an organization created to manage and control Spinnaker Cove. Its members are the condominium unit owners. The supplemental declaration of condominium for Spinnaker Cove (declaration) provides that each unit has a one-ninety-oneth (1/91th) undivided interest in the common area and that "[t]here shall appertain to each condominium unit in Spinnaker Cove Yacht Club, for voting purposes in connection with meetings of the Association, a number of votes in proportion to the aforementioned fraction."

John and Susan Sullivan are trustees and beneficiaries of AZNH, which owns one of the condominium units. In April 2021, the plaintiffs filed a complaint against the Association seeking declaratory judgment and immediate, preliminary, and permanent injunctive relief, alleging that the Association's board of directors had "undertaken steps to purchase land outside the Condominium to add about 10 guest parking spaces." They further alleged that the "Association has asserted that, once purchased, the additional land shall become part of the Condominium common area."

The plaintiffs requested the court to enjoin the Association "from expending assessment monies or incurring any debt to purchase land outside the Condominium." They also sought declarations that the condominium instruments of Spinnaker Cove and New Hampshire law prohibit the Association from both "expending assessment monies or incurring any debt to purchase land outside the Condominium to add guest parking spaces" and "expanding the Condominium."

The Association filed a motion to dismiss. Following a hearing, the trial court denied the plaintiffs' request for injunctive relief and granted the Association's motion to dismiss. The court reasoned that "[b]ecause the Condominium Act allows the Association to purchase land, and the Declaration does not prohibit same," the plaintiffs' complaint "fails to state a claim as a matter of law." The plaintiffs filed a motion for reconsideration and a motion to amend their complaint, which the court denied. This appeal followed.

"When reviewing a trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiffs' pleadings are reasonably susceptible of a construction that would permit recovery." New England Backflow v. Gagne, 172 N.H. 655, 661 (2019). "We assume the plaintiffs' pleadings to be true and construe all reasonable inferences in the light most favorable to them," although "we need not assume the truth of the statements in the plaintiffs' pleadings that are merely conclusions of law." Id. "We then engage in a threshold inquiry that tests the facts in the complaint against the applicable

2

law." Id. "We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief." Id.

"When, as here, the part[ies]' arguments require us to engage in statutory interpretation, our review is de novo." Doe v. Attorney General, 175 N.H. 349, 352 (2022). "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We give effect to every word of a statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include." In re Guardianship of C.R., 174 N.H. 804, 807 (2022). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Doe, 175 N.H. at 352. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id.

The statute at issue is the Condominium Act, RSA chapter 356-B (2022). The Condominium Act "provides that a condominium is created by recording condominium instruments in the local registry of deeds." Ryan James Realty v. Villages at Chester Condo. Assoc., 153 N.H. 194, 196 (2006); see RSA 356–B:7, :11. "The condominium instruments include a declaration of condominium, which defines the rights as among the condominium owners, the condominium association, and the developer." Ryan James Realty, 153 N.H. at 196.

We first address whether the trial court erred in concluding that the Association possesses the authority to purchase land outside the condominium. This inquiry has two prongs: first, whether the trial court erred in concluding that the Condominium Act allows a condominium association to purchase additional real property; and, second, whether the trial court erred in concluding that nothing in Spinnaker Cove's declaration prohibits the Association from purchasing such property.

RSA 356-B:42, I, provides, in part, that "[e]xcept to the extent prohibited by the condominium instruments, and subject to any restrictions and limitations specified therein, the unit owners' association shall have the power to . . . [a]cquire, hold, convey and encumber title to real property." RSA 356-B:42, I. The plaintiffs concede that this provision allows a condominium association to "acquire" real property. The plaintiffs also do not appear to argue on appeal that the term "acquire" in RSA 356-B:42, I, cannot, as a matter of statutory construction, include an acquisition by purchase. The trial court found that the dictionary definition of "acquire" includes "to gain possession or control of" and that the definition "does not limit the manner in which possession or control is gained to non-purchases." (Quotation and brackets omitted.) The plaintiffs do not challenge that finding on appeal.

Rather, the plaintiffs argue that because the statutory authority to "[a]cquire" title is "subject to any restrictions and limitations specified" in the

3

condominium instruments, RSA 356-B:42, I, the Association cannot purchase additional land because the condominium instruments of Spinnaker Cove do not allow the Association to use assessment money for that purpose. They argue that "monies collected as assessments pursuant to the condominium instruments may not be used to 'purchase' (or pay the on-going costs for) real property outside the existing condominium" because doing so would violate the agreement between the unit owners as to the use of assessments, which, in turn, would violate the "restrictions and limitations" clause of RSA 356-B:42.

The plaintiffs point to the definitions of the terms "Assessment" and "Common Expenses" in the declaration. "Assessment" is defined to mean "that portion of the cost o[f] maintenance, repairing, and managing the property which is to be paid by such unit owner." The term "Common Expenses" is defined, in relevant part, to mean "all expenditures lawfully made or incurred by or on behalf of the Association, together with all funds lawfully assessed for the creation and or maintenance of reserves pursuant to the provisions of the Condominium Instruments." The plaintiffs argue that, read together "in harmony with the overall intent of the Declaration," these definitions mean that "a Common Expense is lawfully 'assessed' when it arises from the cost to maintain, repair, or manage the condominium's existing property, or when money is needed to fund reserves in anticipation of major replacement or improvements to existing condominium property." Thus, according to the plaintiffs, "[a]ssessment monies may only be used for maintenance, repair and management of the common area, and for creation and/or maintenance of reserves."

The Association, on the other hand, argues that the plaintiffs' interpretation adds a restriction — "existing condominium property" — that does not appear in either of the definitions on which they rely. In addition, noting that the definition of "assessment" includes the cost of "managing" the property, the Association argues that because it is the entity that manages the condominium, the definition of assessment "necessarily includes the expenses incurred by the Association." Finally, the Association points out that the plaintiffs "rely on definitions of terms, without regard to" the declaration provisions that actually govern expenses and assessments. The Association contends that the definition of common expenses should be read together with section 9-100 of the declaration, which provides that "[e]ach unit owner shall pay all Common Expenses assessed against him by the [Association] Board in accordance with the terms of the Declaration and the By-Laws." The Association concludes that, reading those provisions in conjunction, an assessment is just "a portion charged to the unit owner" and that, if it has the authority to purchase land and the Association members approve the purchase, then, as the trial court found, "the money used is 'properly a common expense' chargeable to Unit Owners."

4

Resolution of this issue requires us to interpret the declaration. "A condominium association's legal documents are a contract that governs the legal rights between the association and property owners." Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 575 (2004). "As is the case with any contract, the interpretation of a condominium's declaration is a question of law, which we review de novo." Id. "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Town of Pembroke v. Town of Allenstown, 171 N.H. 65, 70 (2018) (quotation omitted). We also "must, wherever possible, adopt the interpretation of an ambiguous clause that will be in harmony with the remainder of the document, so that all provisions will have meaning and effect." Thiem v. Thomas, 119 N.H. 598, 602-03 (1979); see also Sanders v. Insurance Co., 72 N.H. 485, 501 (1904) (concluding, in case involving an insurance policy, that "it appears sufficient to rest the decision upon an interpretation of the contract which gives effect to all its provisions, avoids any conflict between them, and is fairly and reasonably inferable from the evidence").

Reading the declaration as a whole, we conclude that the Association's interpretation harmonizes and gives effect to all of the declaration's provisions, and avoids any conflict between them. See Thiem, 119 N.H. at 602–03; Sanders, 72 N.H. at 501. In so concluding, we note an additional provision that conflicts with the plaintiffs' interpretation. Section 8-103 of the declaration provides:

> Purchase by Association. The Board of Directors may, with the authorization and approval of a majority of the unit owners present at any regular or special meeting of the unit owners, acquire a condominium unit in the name of the Association or designee. Acquisition of condominium units by the Association may be made from the Common Expenses Fund, or if such fund is insufficient, the Board may levy an assessment against each unit owner in proportion to his fraction set forth in Chapter 2-500, or the Board in its discretion, may borrow money from an institutional lender to finance the acquisition of such condominium unit; provided, however, that no financing may be secured by an encumbrance on any property other than the condominium unit so acquired by the Association.

(Emphasis added.) If, as the plaintiffs argue, "[a]ssessment monies may only be used for maintenance, repair and management of the common area, and for creation and/or maintenance of reserves," a levy authorized by section 8-103 would not be an "assessment" as the plaintiffs interpret that term. Yet, section 8-103 plainly refers to the levy as an "assessment."

5

For the foregoing reasons, we conclude that the term "assessment" refers to a unit owner's pro rata share of "all expenditures lawfully made or incurred by or on behalf of the Association," and "all funds lawfully assessed for the creation and or maintenance of reserves pursuant to the provisions of the Condominium Instruments." Accordingly, we reject the plaintiffs' contention that the purchase of additional land will "[e]xceed[] the limitations and restrictions for which assessment monies may be used, i.e., maintenance, repair and management of the existing condominium property (or funding reserves)."

The plaintiffs next contend that the proposed purchase of additional land breaches the agreement between unit owners because it "[d]oes not mutually benefit each condominium unit owner." They assert that "purchasing land for the sole purpose of providing 10 parking spaces to guests," not unit owners, "does not mutually benefit all the unit owners." The plaintiffs do not explain how the availability of parking spaces to unit owners' guests does not benefit the unit owners themselves. Nor have they alleged that use of the additional parking spaces would be restricted to the guests of some, but not all, unit owners. Accordingly, we are not persuaded that the proposed purchase would not mutually benefit all unit owners.

The plaintiffs further assert that the use of assessment monies to purchase additional land contravenes the reasonable expectations of a purchaser of a unit in Spinnaker Cove. They cite a portion of the offering statement that states "[i]n addition to the purchase price, the unit owner will be required to pay for certain maintenance, use, and utility service." They further cite the statement that, after the declarant turns operation of the condominium over to the unit owners' association, "[t]he unit owners association will thereafter be responsible for maintaining and operating the condominium, and each unit owner will be responsible for paying his prorate[d] share of the maintenance and operating budget in the form of a common expense assessment." They then argue that, based on the material facts disclosed in the public offering statement:

> [A] reasonable unit owner (or potential unit owner) would understand the intent of the agreement as requiring payment of assessments which mutually benefit all unit owners by supplying funds to maintain, repair and manage the Condominium. It would not be reasonable, in light of the situation of the unit owners and the expressed intent of the agreement, to conclude that assessment monies may be collected and spent for any other purpose (like purchasing land outside the Condominium and paying costs of ownership).

The select portions of the offering statement chosen by the plaintiffs do not persuade us. Directly following the last-quoted statement, the offering

6

statement cautions that "[t]he common expense assessments payable by each unit owner will vary from year [to year] depending on actual expenditures approved by the unit owners association." (Emphases added.) As noted above, "assessment" refers to a unit owner's pro rata share of "common expenses," which, in turn, includes "all expenditures lawfully made or incurred by or on behalf of the Association." Therefore, a unit owner could reasonably expect to be assessed for any lawfully-incurred expenditure approved by the Association, including an expenditure for the purchase of land in accordance with RSA 356-B:42, I. Accordingly, we are not persuaded by the plaintiffs' "reasonable expectations" argument.

We next address the plaintiffs' contention that the trial court erred in not granting declaratory and injunctive relief because the court's "finding that the Spinnaker Cove condominium is 'not an expandable condominium' conclusively supports the allegations that the condominium is non-expandable." The plaintiffs assert that this finding compels the conclusion that their complaint "state[d] a claim for declaratory relief and warrant[s] an injunction with respect to the [Association's] intent to expand the condominium."

The Condominium Act defines an "[e]xpandable condominium" to mean "a condominium to which additional land may be added in accordance with the provisions of the declaration and of this chapter." RSA 356-B:3, XV. "By declaring an expandable condominium, a developer may submit land to the condominium while reserving the right to expand the condominium by later adding more land." Ryan James Realty, 153 N.H. at 196 (quotation omitted). "If [a] condominium is an 'expandable condominium,' the declaration must contain an explicit reservation of the option to add land to the condominium, a legal description of the 'additional land,' which is the land that may be added to the condominium, and numerous other provisions." Id. (quoting RSA 356-B:16, III); see RSA 356-B:16, III (2022). The trial court found that "[b]ecause [Spinnaker Cove's] Declaration does not contain an explicit reservation of the option to add certain land to the condominium, it is not an expandable condominium."

This finding does not, however, entitle the plaintiffs to the declaratory and injunctive relief that they seek. First, as the Association points out, the plaintiffs are not entitled to a declaratory judgment that Spinnaker Cove is not an expandable condominium because the parties are not adverse on that issue — the Association agrees that it is not. More importantly, the plaintiffs seek not only a declaration that the condominium is not expandable, but also a declaration that "the Condominium Instruments for Spinnaker Cove . . . and New Hampshire law, prohibit or otherwise restrict or limit the [Association] from adding land to the Condominium."

The plaintiffs argue that "[c]ontrary to RSA 356-B:25, the [trial court] <u>incorrectly</u> found, there is no provision in the Condominium Act which prohibits adding land to non-expandable condominiums." That provision, entitled "Expansion of the Condominium," provides, in relevant part, that "[n]o condominium shall be expanded except in accordance with the provisions of the declaration and of this chapter." RSA 356-B:25. The plaintiffs appear to view "expansion" of a condominium, as referenced in RSA 356-B:25, as providing the only means by which land may be added to a condominium; in other words, they appear to regard "expand" and "add land" as synonymous. We disagree.

Reading the provisions regarding expandable condominiums in light of the Condominium Act as a whole, we conclude that those provisions refer to and govern a specific mechanism by which a declarant may reserve the right to add land to a condominium and subsequently do so; in providing that "[n]o condominium shall be expanded except in accordance with the provisions of the declaration and of this chapter," RSA 356-B:25 refers only to that specific mechanism. The provisions regarding expandable condominiums, including RSA 356-B:25, neither apply to nor preclude the addition of land by another method consistent with the Condominium Act and the condominium instruments. Accordingly, we reject the plaintiffs' contention that an addition of land to the condominium by such means would constitute a "<u>de facto</u> expansion of the condominium which nullifies the legislature's specific prohibition" in RSA 356-B:25.

Construing the Condominium Act as a whole, we necessarily consider RSA 356-B:42, I, another statutory provision at issue here. It provides:

> I. Except to the extent prohibited by the condominium instruments, and subject to any restrictions and limitations specified therein, the unit owners' association shall have the power to:
>
> . . .
>
> (d) Acquire, hold, convey and encumber title to real property, including <u>but not limited to</u> condominium units, whether or not the association is incorporated.

RSA 356-B:42, I (emphasis added). This section plainly allows a condominium association to acquire real property outside the condominium. If the plaintiffs' construction of RSA 356-B:25 were correct, however, the association would never be able to add the real property so acquired to the condominium. We conclude that the legislature did not intend such a result.

8

We now consider whether the Condominium Act provides another mechanism, other than RSA 356-B:25, for adding land to a condominium. There is no provision that specifically addresses the addition of land to a condominium other than by the declarant of an expandable condominium. The Association asserts that "any change to the physical scope of a condominium necessarily requires an amendment to the declaration" and contends that "[n]othing in the Condominium Act prohibits the unit owners from adding land to the condominium, including land purchased by the association." We agree.

Amendments to a condominium declaration are governed by RSA 356-B:34, which provides, in relevant part:

> II. If there is any unit owner other than the declarant, then the condominium instruments shall be amended only by agreement of unit owners of units to which 2/3 of the votes in the unit owners' association appertain, or such larger majority as the condominium instruments may specify, except in cases for which this chapter provides different methods of amendment. . . .
>
> . . . .
>
> III. If none of the units in the condominium is restricted exclusively to residential use, then the condominium instruments may specify majorities smaller than the minimums specified by paragraphs I and II.
>
> . . . .
>
> V. Except to the extent expressly permitted or expressly required by other provisions of this chapter, no amendment to the condominium instruments shall change the boundaries of any unit, the undivided interest in the common areas appertaining thereto, the liability for common expenses or rights to common profits appertaining thereto, or the number of votes in the unit owners' association appertaining thereto.

RSA 356-B:34. This section expresses no limitations, other than those contained in paragraph V, on the unit owners' ability to amend the declaration. Accordingly, nothing in this section prohibits unit owners from adding land purchased by the condominium association to the common area of the condominium.

We find support for this conclusion in our decision in Holt v. Keer, 167 N.H. 232 (2015). In Holt, the Keers challenged an amendment to the condominium declaration that "changed the designation of certain condominium property from common area to limited common area, to the

9

benefit of [two] units . . . , and to the detriment of the remaining units," including the Keers' unit. Holt, 167 N.H. at 237. We addressed the challenge under RSA 356-B:19, which then provided, and currently provides, in relevant part, that "[n]o amendment to any condominium instrument shall alter any rights or obligations with respect to any limited common area without the consent of all unit owners adversely affected thereby as evidenced by their execution of such amendment." RSA 356-B:19, I; see Holt, 167 N.H. at 240. We held that the amendment at issue was unlawful "[b]ecause the Keers' right to use certain portions of the common area was extinguished by the assignment of those areas as limited common area," and thus the Keers were adversely affected, "yet they did not consent to or execute the amendment as contemplated by RSA 356-B:19, I." Holt, 167 N.H. at 242.

In so holding, we rejected the opposing parties' argument that the amendment, adopted by three of the four unit owners, "was lawfully made pursuant to the second clause of RSA 356-B:19, III, which states that limited common area may be created or expanded by an amendment to the condominium instruments by 2/3 of the votes in the unit owners association, or such higher percentage as the condominium instruments may provide." Id. at 241 (quotations omitted); see RSA 356-B:19, III. We reasoned:

> The second clause of RSA 356-B:19, III allows limited common areas to be "created or expanded" pursuant to a two-thirds vote, or such higher percentage as provided in the condominium instruments. If, as discussed above, "created or expanded" limited common area were construed to include all assignment and reassignment of limited common areas, the second clause would directly conflict with RSA 356-B:19, I. Instead, we interpret the second clause of RSA 356-B:19, III to apply only when the creation or expansion of limited common area would not adversely affect unit owners under RSA 356-B:19, I.

Holt, 167 N.H. at 243.

Under analogous reasoning, amending a condominium declaration, pursuant to RSA 356-B:34, II, to add common area would not run afoul of RSA 356-B:34, V "[b]ecause pre-existing common area and limited common area rights would remain unaffected." Id. Accordingly, we reject the plaintiffs' assertion that "no land may be added" to a non-expandable condominium.

The plaintiffs next contend that the trial court's decision was a de facto declaratory judgment in favor of the Association, which, they appear to assert, was erroneous in light of the procedural posture of the case. They argue:

> [T]he Superior Court's proceedings . . . constitute a declaratory judgment, based upon a misperception about the merits, in favor

10

of the [Association]. There was no motion for judgment on the pleadings, no motion for summary judgment, and no formal trial. The Court did not dismiss on the basis that there was a procedural defect in Plaintiffs' pleadings, but dismissed on the basis that the Plaintiffs lose as a matter of law.

The Association moved to dismiss, in part, on the ground that the plaintiffs' complaint "is premised entirely on a fundamental misunderstanding of the law." The trial court properly interpreted that ground as a motion to dismiss for failure to state a claim and, for the reasons stated herein, properly granted it. Accordingly, we reject this claim of error.

The plaintiffs also appeal the denial of the injunctive relief they sought. The trial court denied the requested relief after finding that the plaintiffs had not shown a likelihood of success on the merits, a prerequisite to the issuance of a preliminary injunction. See N.H. Dep't of Envtl. Servs. v. Mottolo, 155 N.H. 57, 63 (2007). Having concluded that the trial court properly dismissed the plaintiffs' complaint for failure to state a claim, we necessarily also affirm the court's denial of the requested injunctive relief.

To the extent that the plaintiffs challenge the denial of their motion to amend their complaint, we find no error. The plaintiffs concede that their original and amended complaints "state identical claims for relief." They assert, however, that their amended complaint "also contains specific references to applicable portions of the condominium instruments which show the limitations and restrictions applicable to spending assessment monies." Having reviewed the amended complaint and the portions of the condominium instruments and the law cited therein, we agree with the trial court that the amended complaint does not cure the deficiencies of the original complaint. In other words, for all of the reasons stated in this opinion, the amended complaint also fails, as a matter of law, to state a claim.

<u>Affirmed</u>.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

11