NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2016-0357

CONDOMINIUMS AT LILAC LANE UNIT OWNERS' ASSOCIATION

v.

MONUMENT GARDEN, LLC & a.

Argued: March 30, 2017
Opinion Issued: June 9, 2017

Marcus, Errico, Emmer & Brooks, P.C., of Braintree, Massachusetts (Edmund A. Allcock and Thomas W. Aylesworth on the brief, and Mr. Allcock orally), for the plaintiff.

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Roy W. Tilsley, Jr. and Michael A. Klass on the brief, and Mr. Tilsley orally), for the defendants.

Perkins & Anctil, P.C., of Westford, Massachusetts (Robert W. Anctil and Scott Eriksen on the brief), for Community Associations Institute, as amicus curiae.

DALIANIS, C.J.  The plaintiff, Condominiums at Lilac Lane Unit Owners' Association (Lilac), appeals the order of the Superior Court (Houran, J.) granting summary judgment to the defendants, Monument Garden, LLC (Monument Garden) and Eastern Bank.  The trial court determined that a residential development in Dover known as the Condominiums at Lilac Lane (the condominium) is not subject to the provisions of the Condominium Act (Act), RSA chapter 356-B (2009 & Supp. 2016), regulating "convertible land."  We affirm.

I

The following facts are undisputed.  New Meadows, Inc. (New Meadows) was the original declarant of the condominium.  The condominium land was initially part of a preexisting condominium development known as the Meadows at Dover.  New Meadows planned to construct buildings on Meadows at Dover land, but sought to separate the new development — the condominium at issue here — from the existing development.  The attorney general approved the proposed division in February 2010.  See RSA 356-B:34-a, IV, V (2009).

Shortly thereafter, New Meadows established the condominium by executing and recording a Declaration of Condominium (declaration) with the Strafford County Registry of Deeds, in accordance with the Act.  See RSA 356-B:16 (2009).  The declaration describes the land submitted to the condominium as:

> A certain tract or parcel of land together with the buildings thereon situate on Lilac Lane in the City of Dover County of Strafford and State of New Hampshire, the same being more particularly delineated as The Condominiums at Lilac Lane on plan entitled "Revision IV to the Condominium Site Plan, Tax Map H Lot 35A, The New Meadows, Inc." prepared by MSC Civil Engineers & Land Surveyors, Inc. and to be recorded in the Strafford County Registry of Deeds . . . .

The declaration states that the condominium "shall consist of a maximum of one hundred twenty (120) units in five buildings designated on the Plan as Buildings 12, 13, 14, 15 and 16."  The declaration contains a list identifying the 120 units.

The site plan shows two existing buildings, labeled Building 12 and Building 13, on the approximately 7.18 acres of submitted land.  According to the accompanying floor plans, Building 12 was substantially completed and Building 13 was under construction.  The site plan also shows three proposed buildings, labeled Building 14, Building 15, and Building 16.  According to the

2

floor plans, construction on these buildings had not yet begun. The floor plans show the twenty-four units existing, or proposed to be built, within each building for a total of 120 units. In 2012, New Meadows transferred its interests in the condominium by deed to Monument Garden. Monument Garden executed a mortgage in favor of Eastern Bank's predecessor, Centrix Bank and Trust (Centrix), in exchange for a loan to complete the purchase. Monument Garden completed construction on Building 13 in June 2013, and on Building 14 in July 2014. Monument Garden retained ownership of the units in Buildings 13 and 14.

Lilac is an association comprised of the owners of units located within the condominium and is subject to the condominium's bylaws. The bylaws provide that "[e]ach completed Unit shall be entitled to one (1) vote" and that "[i]f the Declarant owns or holds title to one or more Units, the Declarant shall have the right at any meeting of the Association to cast the vote(s) to which such Unit(s) is entitled." The bylaws also provide that the condominium is to be managed by a five-member Board of Directors (board). Lilac votes on, among other things, the election and removal of members of the board. Displeased by the way in which the board had been managing the condominium, Monument Garden, claiming to hold the requisite 30% of the unit owners' votes, called for a special meeting to remove one of the board members.

Lilac sued, seeking a declaratory judgment that it owns certain condominium units, that Monument Garden has no rights to further develop condominium lands, that Monument Garden lacks sufficient voting rights to control Lilac's board, and that Eastern Bank does not hold a valid note and mortgage to condominium lands. Lilac also sought damages for unjust enrichment/disgorgement, a prejudgment and lis pendens attachment, and a preliminary injunction ordering the defendants to refrain from conveying their respective interests in certain property, ordering Monument Garden to refrain from developing condominium lands and from exercising voting rights premised upon its asserted ownership of certain condominium units, and ordering Eastern Bank to refrain from exercising its claimed rights under the mortgage. The Superior Court (Temple, J.) denied Lilac's request for preliminary injunctive relief and a prejudgment attachment, and declined to rule on Lilac's request for approval to file a writ in the form of lis pendens, noting that court approval was not required for such a filing.

The defendants moved for summary judgment, asserting that there are no genuine issues of material fact in dispute and that they are entitled to judgment as a matter of law because "all counts within Plaintiff's Complaint rely upon the flawed premise that the Condominium contains convertible land." Lilac cross-moved for summary judgment on all claims except its claim for unjust enrichment/disgorgement. Lilac conceded that "[t]he parties are in

3

agreement on two points — first, this action can be determined on summary judgment, and second, the Condominium Declaration contains no reference to 'convertible land' or convertible land rights within the meaning of the . . . Act." Nonetheless, Lilac argued, among other things, that "as a matter of law, the Association is entitled to a judgment declaring . . . that Buildings 13 and 14 and the units located in those buildings are Condominium common areas, and that Monument Garden has no right to any future development on Condominium land."

The trial court found that the condominium is not subject to the provisions of the Act regulating "convertible land." The court disagreed with Lilac's assertion that the only method by which a declarant can develop a condominium in phases is by designating certain portions of common area as convertible land and by later converting that land to units. Rather, the trial court determined that, by its plain language and purpose, the Act allows for the creation of a condominium that includes planned future development but that does not contain convertible land. Considering the relevant provisions of the Act, the court concluded that "it is apparent from a review of the condominium instruments that, although the condominium was not fully developed, it did not contain any convertible land." Accordingly, the court granted summary judgment to the defendants.

II

On appeal, Lilac raises three issues: first, whether the trial court erred in interpreting the Act "as allowing a condominium declarant to construct future condominium units on existing condominium land after a condominium is created, without time limitation, contrary to the 5 year statutory time limit and other requirements for convertible land" under RSA 356-B:23, III (2009); second, whether the court erred "in allowing a condominium declarant to develop future 'land only' units;" and third, whether the trial court erred in interpreting provisions of the Act "to allow a declarant to create units without amending the condominium declaration and recording substantially completed certificates as required" by RSA 356-B:23, II (2009) and RSA 356-B:20, I, III (2009), II (Supp. 2016). The defendants argue that the Act "allows for the creation of condominium units that are not physically completed at the time of the condominium's creation," and that the trial court correctly determined that the condominium is not subject to the five-year limitation for the development of units on convertible land.

Because both parties moved for summary judgment and neither contends that there are any genuine issues of material fact, we review the trial court's application of law to the facts de novo. Ryan James Realty v. Villages at Chester Condo. Assoc., 153 N.H. 194, 196 (2006). The issues on appeal present questions of law involving the interpretation of a statute, which we

4

review de novo.  Town of Windham v. Lawrence Sav. Bank, 146 N.H. 517, 519 (2001).

When we interpret a statute, we ascribe the plain and ordinary meaning to the words used.  Appeal of Town of Seabrook, 163 N.H. 635, 644 (2012).  We do not look beyond the language of the statute to determine legislative intent if the language is clear and unambiguous.  Id.  Nor will we consider what the legislature might have said or add words the legislature did not include.  Id.  We interpret statutory provisions in the context of the overall statutory scheme and not in isolation.  N.H. Housing Fin. Auth. v. Pinewood Estates Condo. Ass'n, 169 N.H. 378, 382 (2016).  This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.  Zorn v. Demetri, 158 N.H. 437, 439 (2009).

III

The Act applies "to all condominiums and to all condominium projects" in the state.  RSA 356-B:2, I (2009).  Under the Act, "'[c]ondominium'" means "real property, and any interests therein, lawfully submitted to this chapter by the recordation of condominium instruments."  RSA 356-B:3, V (2009).  "'Condominium instruments'" include "the declaration, bylaws, and site plans and floor plans" recorded in the registry of deeds.  RSA 356-B:3, VI (2009); see Holt v. Keer, 167 N.H. 232, 240 (2015) (explaining that "to create a condominium, certain 'condominium instruments' must be recorded with the registry of deeds in the county where the condominium is located").

The declaration for every condominium must contain certain information including, among other things, a legal description by metes and bounds of the submitted land, a description or delineation of the boundaries of the units, and a description or delineation of the limited common areas, if any, showing or designating the unit or units to which each is assigned.  RSA 356-B:16, I(c)-(e) (2009); see Ryan James Realty, 153 N.H. at 196 (explaining that "condominium instruments include a declaration of condominium, which defines the rights as among the condominium owners, the condominium association, and the developer").

A declarant must prepare certified site plans and floor plans that depict all units that are located or will be located on any portion of the submitted land.  See RSA 356-B:7 (2009), :20, I, II.  The site plans must include the location of any existing or future improvements and indicate whether such improvements have not been begun or have not been completed.  RSA 356-B:20, I.  The Act imposes obligations upon declarants to complete the development in accordance with the condominium instruments.  See RSA 356-B:29, II (2009) (stating that the declarant "shall complete all improvements

5

labeled '(NOT YET COMPLETED)' on site plans . . . unless the condominium instruments expressly exempt the declarant from such obligation, and shall, in the case of every improvement labeled '(NOT YET BEGUN)' on such site plans, state in the declaration either the extent of the obligation to complete the same or that there is no such obligation"); see also RSA 356-B:53, I(b) (2009 & Supp. 2016), :51, VI (2009).

Condominiums may be created to contain "convertible land," RSA 356-B:16, II (2009), to be an "expandable condominium," RSA 356-B:16, III (2009), or to be a "contractable condominium," RSA 356-B:16, IV (2009). In addition to the requirements set forth in RSA 356-B:16, I(a)-(j) that are applicable to every declaration of condominium, the Act sets forth specific information that must also be included in the declaration for condominiums that contain convertible land, see RSA 356-B:16, II(a)-(g), for those that are expandable condominiums, see RSA 356-B:16, III(a)-(m), and for those that are contractable condominiums, see RSA 356-B:16, IV(a)-(f).

"'Convertible land'" is defined as "a building site which is a portion of the common area, within which additional units and/or a limited common area may be created in accordance with this chapter." RSA 356-B:3, X (2009). If a condominium contains convertible land, the Act requires, among other things, that the declaration contain a legal description of the convertible land. RSA 356-B:16, II(a). A site plan depicting "the location and dimensions of any convertible lands within the submitted land" must be recorded along with the declaration. RSA 356-B:20, I. To convert convertible land into units, a declarant must "record an amendment to the declaration describing the conversion" along with applicable site plans and floor plans. RSA 356-B:23, II; see RSA 356-B:20, III, IV (2009). Unless extended by an amendment to the declaration, the declarant has five years within which to convert the convertible land into units. RSA 356-B:23, III.

IV

Lilac first argues that "[t]he Act defines 'convertible land' and 'expandable condominium' as the two means by which buildings and units may be built in the future, after the condominium is created," and that the Act "contains no term, defined or otherwise, referring to any other means for future phased condominium development that is unlimited in time." Thus, Lilac asserts, the trial court, in violation of "a fundamental princip[le] of statutory construction," "invented a third phasing option, not defined or named in the Act, that would allow a declarant to create future condominium buildings and units with no time limit, and without being subjected to any other requirements or restrictions that apply to convertible land and/or expandable condominiums."

6

The defendants counter that the plain language of the Act allows for the creation of condominiums that contain unbuilt units. They assert that "all 120 units and Buildings 12-16 were submitted under the Act in 2010 at the inception of the Condominium" and that Monument Garden "seeks not to create new buildings or units from common area; it simply seeks to construct those remaining unbuilt units that have existed since 2010, consistent with the Act and the Condominium's site and floor plans, declaration, and bylaws."

We agree with the defendants that the plain language of the Act contravenes Lilac's assertion that "convertible land" and "expandable condominium" are the only means by which units may be built in the future after the condominium is created. The Act states that condominium instruments cannot be recorded "unless all units located <u>or to be located on any portion of the submitted land, other than within the boundaries of any convertible lands</u>, are depicted on site plans and floor plans that comply with RSA 356-B:20, I and II." RSA 356-B:7 (emphasis added). As the trial court correctly reasoned, "[t]his provision necessarily implies that a condominium can be created prior to the completion of construction on all units, without the need to classify portions of the condominium land as convertible — <u>i.e.</u>, that not all units 'to be located' within the condominium must be located on subsequently converted land."

Furthermore, RSA 356-B:20, I, provides:

> In the case of any <u>improvements</u> located or to be located on any portion of the submitted land <u>other than within the boundaries of any convertible lands</u>, the site plans shall indicate which, if any, have not been begun by the use of the phrase "(NOT YET BEGUN)" and which, if any, have been begun but have not been substantially completed by the use of the phrase "(NOT YET COMPLETED)."

RSA 356-B:20, I (emphasis added). Pursuant to the plain language of these provisions, the Act provides for the creation of a condominium that includes planned future development but does not contain convertible land.

Lilac argues that "[i]mprovements . . . must by definition be non-units." The term "improvement," as used in RSA 356-B:20, I, is not defined in the Act and, therefore, we ascribe to it its plain and ordinary meaning. <u>See</u> <u>Kenison v. Dubois</u>, 152 N.H. 448, 451 (2005). "Improvement" is defined as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." <u>Webster's Third New International Dictionary</u> 1138 (unabridged ed. 2002). Thus, we interpret the term "improvement" in the context of the Act to include

7

"unit," which is defined as "a portion of the condominium designed and intended for individual ownership and use." See RSA 356-B:3, XXIX (2009).

We disagree with Lilac's assertions that the trial court "erroneously reasoned that Monument Garden did not purport to create future units on Condominium Common area (which would trigger the convertible land provision)" and thereby erroneously concluded that "the mere designation of areas where units will be built is, in and of itself, the creation of 'units.'" The Act requires that "[i]n the case of any improvements located or to be located on any portion of the submitted land other than within the boundaries of any convertible lands, the site plans shall indicate which, if any, have not been begun by the use of the phrase '(NOT YET BEGUN)' and which, if any have been begun but have not been substantially completed by the use of the phrase '(NOT YET COMPLETED).'" RSA 356-B:20, I. Lilac does not dispute the trial court's factual finding that the site plans for the condominium recorded with the 2010 declaration depict "all five buildings, labeling Building 12 as 'EXISTING BUILDING,' Building 13 as 'EXISTING BUILDING . . . UNDER CONSTRUCTION," and the remaining buildings as "PROPOSED BUILDING . . . NOT YET BEGUN."

Further, the Act defines "convertible land" as "a building site which is a portion of the common area, within which additional units . . . may be created." RSA 356-B:3, X (emphasis added). "'Common area,'" in turn, is defined as "all portions of the condominium other than the units." RSA 356-B:3, II (2009) (emphasis added). Given the plain language of the Act, the trial court correctly determined that

> land is only classified as "convertible" where the building site was initially intended to be "common area" and where that area is being converted into units. Here, Monument Garden has not built units on any portion of the condominium previously identified as "common area," and does not plan to do so in the future . . . . Because the units in dispute were always identified as units, they were never part of the "common area," and there is, accordingly, no need to convert the common area into units.

The recorded site plans comply with the requirements in RSA 356-B:20, I, which under its unambiguous language allows for uncompleted and future improvements, including units, located on submitted land and outside the boundaries of any convertible land. See RSA 356-B:7 ("[n]o condominium instruments shall be recorded unless all units located or to be located on any portion of the submitted land, other than within the boundaries of any convertible lands, are depicted on site plans . . . that comply with RSA 356-B:20, I").

8

Lilac next argues that "the trial court erred by diminishing the Act's clear requirement that units outside convertible land must be substantially completed" when a condominium is created. (Capitalization and bolding omitted.) Lilac relies upon statutory language stating that "[e]ach site plan shall be certified as to its accuracy and compliance with the provisions of this paragraph by a registered land surveyor, and the said surveyor shall certify that all units or portions thereof depicted on any portion of the submitted land other than within the boundaries of any convertible lands have been substantially completed." RSA 356-B:20, I.

That language, however, must be read within the context of the statute as a whole. See Zorn, 158 N.H. at 438-39. As the trial court correctly reasoned,

> considering the statute as a whole, . . . the plain language of this provision does not require a surveyor to certify that all units are substantially completed prior to the creation of the condominium. Rather, it requires a surveyor to certify that all units are substantially completed to the extent depicted in the submitted plans. See RSA 356-B:20, I (requiring the surveyor to "certify that all units or portions thereof depicted . . . have been substantially completed . . ." (emphasis added)). To conclude otherwise would not only nullify earlier portions of RSA 356-B:20, I, but would also ignore language contained in the very sentence Lilac relies upon.

(Footnote omitted.) Further, this interpretation is consistent with the Act's purpose. As the trial court explained,

> RSA 356-B:7 proscribes the creation of a condominium before the recording of site plans and floor plans, and RSA 356-B:20 sets forth what those plans must depict. The plain language of these provisions indicates that they are designed to protect the interests of potential condominium unit owners—particularly, by ensuring that they are apprised of the details of the planned development. See RSA 356-B:7, :20; see also Holt, 167 N.H. at 241-42 . . . . Interpreting the Act as allowing for the creation of a condominium that includes planned future development but does not contain convertible land has no effect on this purpose; so long as the site and floor plans depict the requisite information, potential unit owners will be fully informed.

Finally, Lilac argues that it is entitled to partial summary judgment "declaring that Buildings 13 and 14 and units therein are common area, that Monument Garden is time-barred from asserting any phasing rights, and Eastern Bank has no security interests in the condominium." (Capitalization

and bolding omitted.)  Because these assertions are based upon the faulty premise that Buildings 13 and 14 were subject to the Act's requirements for convertible land, we reject them for the reasons stated above.  To the extent that Lilac's brief raises additional arguments, we conclude that they warrant no further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.