NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
Case No. 2023-0170
Citation: Commerce Park Condo. Ass'n v. Little Deer Valley, LLC, 2024 N.H. 16

COMMERCE PARK CONDOMINIUM ASSOCIATION

v.

LITTLE DEER VALLEY, LLC

Argued: January 18, 2024
Opinion Issued: April 4, 2024

Ducharme Law, P.L.L.C., of Stratham (Robert E. Ducharme on the brief and orally), for the plaintiff.

Orr & Reno, P.A., of Concord (James F. Laboe and Meredith Farrell Goldstein on the brief, and Meredith Farrell Goldstein orally), for the defendant.

DONOVAN, J.

[¶1] The defendant, Little Deer Valley, LLC (declarant), appeals a decision from the Superior Court (St. Hilaire, J.) denying its motion for summary judgment and granting the plaintiff's, Commerce Park Condominium Association's (Association), cross-motion for summary judgment. The declarant argues that the trial court erred by ruling that: (1) New Hampshire's Condominium Act, RSA ch. 356-B (2022), requires physical construction for

conversion; (2) the Condominium Act required the declarant to engage in substantial construction within the specified five-year or ten-year time period in order to convert the convertible land, see RSA 356-B:23, III; (3) the declarant's recordation of an amended declaration and related plans in April 2010 failed to convert convertible land; and (4) the declarant's construction of a new structure, Building C, would violate RSA 356-B:23, III and the overall purpose of the Condominium Act.  We conclude that to convert convertible land, the Condominium Act required the declarant to file "appropriate instruments" within the five- to ten-year statutory deadline but did not require the declarant to physically construct Building C.  RSA 356-B:23; see RSA 356-B:20.  We also conclude that the declarant properly converted the convertible land when it filed the amended declaration and new site plan in 2010.  See RSA 356-B:23, :20.  Accordingly, we reverse.

I.      Facts

[¶2] The following facts are taken from the trial court's order or are otherwise supported by the record.  In May 2005, the declarant recorded a declaration of condominium (declaration) establishing Commerce Park Condominium.  The declaration provided that Commerce Park Condominium would comprise three multi-unit buildings: Building A, Building B, and Building C.  The declaration reserved the declarant's right "for a period of five years from the date of recording of this Declaration . . . to create and build an additional building, designated as Building C," on convertible land as delineated and set forth in the corresponding site plans.  See RSA 356-B:16, II (permitting a condominium developer to designate convertible land); RSA 356-B:23, III (requiring conversions to occur within five years from the recordation of the declaration unless an amendment is filed).

[¶3] In April 2010, shortly before the five-year deadline, the declarant recorded an amendment to the declaration stating that the declarant "by execution and recording of this Third Amendment hereby exercises this right and option to convert the convertible land into" Building C.  At the same time, the declarant also recorded a new site plan.  The parties agree that the declarant did not file with the amendment, nor has it subsequently filed, floor plans for Building C.  The declarant maintains that recording the amendment and the new site plan converted the convertible land pursuant to RSA 356-B:23, I, and that it was not required to file floor plans for Building C to convert the land.  The Association contends that pursuant to RSA 356-B:23, III, the amendment extended the declarant's right to convert for another five years, until May 2015, but did not actually convert the land.

[¶4] In April 2019, fourteen years after the original declaration was recorded, the declarant applied for a building permit to construct Building C.  Thereafter, the Association voted to oppose the construction because, in its view, the declarant's right to construct Building C had expired.  Subsequently,

2

the Association filed a petition in superior court for temporary and permanent injunctive relief to enforce the condominium declaration and bylaws. In May 2021, the superior court granted the Association's request for a preliminary injunction as to the construction of Building C.

[¶5] In June 2022, the declarant moved for summary judgment. The declarant argued that, when it recorded the amendment to the declaration in April 2010, it converted the land intended for Building C before the five-year statutory deadline, and, therefore, it was permitted to build Building C. See RSA 356-B:23, I, III. The Association objected to the declarant's motion and filed a cross-motion for summary judgment. The Association argued that the April 2010 amendment extended the declarant's right to convert for an additional five years but did not convert the land. See RSA 356-B:23, III. The Association argued that the Condominium Act required the declarant to physically construct Building C for conversion to occur, and because the declarant did not construct Building C by the conversion deadline, its right to build had expired. The Association also argued that the declarant's failure to build Building C violated the terms of the declaration, in which the declarant reserved the right "for a period of five years from the date of recording" the declaration, "to create and build" Building C.

[¶6] In January 2023, the superior court denied the declarant's motion for summary judgment and granted the Association's cross-motion for summary judgment. The court ruled that pursuant to RSA chapter 356-B, construction is required for conversion, and because the declarant "did not engage in any substantial construction of Building C before the extended deadline of May 9, 2015, its right to do so expired at that time." The court reasoned that allowing the declarant "to rely on its 2010 amendment to begin meaningful construction of Building C in 2019, four years after the ten-year deadline," would "run afoul of RSA 356-B:23, III." Further, the court explained, adopting the declarant's interpretation would violate "the wording and spirit of the ten-year maximum set forth in RSA 356-B:23, III" and contravene the Condominium Act's purpose to "protect buyers and establish reasonable expectations among the parties." The trial court also concluded that the declarant's "attempt to begin construction well after the May 9, 2015 deadline would be contrary to section 14-1 of the Declaration, which provided five years from 2005 (later extended to ten years) 'to create and build an additional building, designated as Building C . . . .'"

[¶7] The trial court ruled that: (1) any and all of the declarant's right, title, and interest under the declaration and Association's bylaws, including the right to convert land, expired in May 2015; and (2) the land previously designated as convertible land under the declaration is common area of the Association, owned by the unit owners of the Association, subject to the control of the Association, and free from any development or convertible land rights of the declarant or any entity other than the Association. The court enjoined the

declarant and its successors in interest from: (1) attempting to convert any of the land to additional units; and (2) creating, conveying, mortgaging, selling, transferring, or encumbering any portion of the common area of the Association. The declarant filed a motion for reconsideration, which the court denied. This appeal followed.

## II.      Analysis

[¶8] On appeal, the parties dispute the correct interpretation of RSA 356-B:20 and RSA 356-B:23 and the requirements necessary to convert convertible land. When reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we will grant summary judgment to the prevailing party. See Boyle v. City of Portsmouth, 172 N.H. 781, 785 (2020). We review the trial court's application of the law to the facts de novo. Id.

[¶9] The parties' arguments concern New Hampshire's Condominium Act, set forth in RSA chapter 356-B, which governs all condominiums and condominium projects. RSA 356-B:1, :2; Ryan James Realty v. Villages at Chester Condo. Assoc., 153 N.H. 194, 196 (2006). The Condominium Act provides that a condominium is created by recording condominium instruments in the local registry of deeds. RSA 356-B:7, :11; Ryan James Realty, 153 N.H. at 196. The condominium instruments include a declaration of condominium, which defines the rights as among the condominium owners, the condominium association, and the developer. RSA 356-B:3, VI; Ryan James Realty, 153 N.H. at 196.

[¶10] Condominiums may include "convertible land." RSA 356-B:16, II; Condos. at Lilac Lane Unit Owners' Ass'n v. Monument Garden, 170 N.H. 124, 130 (2017). "'Convertible land'" is defined as "a building site which is a portion of the common area, within which additional units and/or a limited common area may be created in accordance with this chapter." RSA 356-B:3, X. "The declarant may convert all or any portion of any convertible land into one or more units or limited common areas, or both, subject to any restrictions and limitations which the condominium instruments may specify." RSA 356-B:23, I. "Any such conversion shall be deemed to have occurred at the time of the recordation of appropriate instruments pursuant to paragraph II [of RSA 356-B:23] and RSA 356-B:20, III." Id. Such "appropriate instruments" include an amendment to the declaration describing the conversion, floor plans, and site plans. RSA 356-B:23, I, II; RSA 356-B:20, III; see also Monument Garden, 170 N.H. at 130. The declarant has five years to convert the convertible land into units, unless a shorter time is specified in the declaration; however, "the time limit contained in the declaration may be extended by not more than 5 years by

4

an amendment to the declaration." RSA 356-B:23, III; see also Monument Garden, 170 N.H. at 130.

A. Interpretation of the Statute

[¶11] The primary issue on appeal is whether construction is required to convert convertible land. The Association argues that "the Condominium Act requires a declarant to engage in physical construction to convert land into units" and that such construction must be substantially complete by the conversion deadline set forth in RSA 356-B:23, III. (Emphasis omitted.) The Association derives the substantial completion requirement from RSA 356-B:20, I, asserting that this provision requires that "new site plans have to be filed each time land is converted into Units, and the site plans can only be created if a registered land surveyor certifies that the units have [been] substantially completed." See RSA 356-B:23, I; RSA 356-B:20, I, III. Applying its interpretation, the Association maintains that because the declarant did not substantially complete Building C by the conversion deadline set forth in RSA 356-B:23, III, the declarant failed to convert the convertible land, and its right to build on the convertible land expired.

[¶12] The declarant counters that RSA 356-B:23, I, unambiguously provides that conversion occurs "at the time of the recordation of appropriate instruments." Thus, it argues, "[t]o convert convertible land, a declarant must simply record an amended declaration, new site plans, and floor plans for any buildings existing on the convertible land." See RSA 356-B:23, I, II; RSA 356-B:20, III. According to the declarant, the conversion deadline set forth in RSA 356-B:23, III is a "notice deadline" — not a construction deadline — that "protects interested parties by requiring declarants to record their plans for convertible land." Applying this interpretation, the declarant maintains that because construction is not required for conversion, it converted its land in April 2010 when it recorded the amended declaration and new site plan in accordance with RSA 356-B:23, I. We agree with the declarant.

[¶13] The interpretation of a statute presents a question of law that we review de novo. In re J.S., 174 N.H. 375, 379 (2021). In matters of statutory interpretation, we determine the legislative intent as expressed by the words of the statute considered as a whole. See State v. Pinault, 168 N.H. 28, 31 (2015). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. Id. We interpret statutes in the context of the overall statutory scheme and not in isolation. Id.

[¶14] For conversion to occur, RSA 356-B:23 requires the declarant to record "appropriate instruments" which, pursuant to RSA 356-B:20, III,

5

include site plans and floor plans. RSA 356-B:20, III provides, in relevant part, that "[w]hen converting all or any portion of any convertible land," the declarant "shall record new site plans of survey conforming to the requirements of paragraph I" of RSA 356-B:20 and "shall record, with regard to any structures on the land being converted, or added, either floor plans conforming to the requirements of paragraph II, or certifications, conforming to the certification requirements of said subsection, of floor plans previously recorded pursuant to RSA 356-B:21." Therefore, the recorded site plans must satisfy the requirements set forth in RSA 356-B:20, I, and the recorded floor plans must satisfy the requirements set forth in RSA 356-B:20, II.

[¶15] In arguing that the declarant was required to substantially complete Building C prior to conversion, the Association relies upon the sentence in RSA 356-B:20, I, that provides:

> Each site plan shall be certified as to its accuracy and compliance with the provisions of this paragraph by a registered land surveyor, and the said surveyor shall certify that all units or portions thereof depicted on any portion of the submitted land other than within the boundaries of any convertible lands have been substantially completed.

(Emphasis added.)

[¶16] We previously interpreted this provision in RSA 356-B:20, I, in Monument Garden, 170 N.H. at 133. At issue in Monument Garden was whether the Condominium Act allows for the creation of condominium units that are not yet physically complete at the time that the condominium is established. Id. at 128. In other words, we considered whether a declarant can construct future condominium units, without time limitation, on existing condominium land after a condominium is created. Id. We held that "a condominium can be created prior to the completion of construction on all units" and that "the Act provides for the creation of a condominium that includes planned future development but does not contain convertible land." Id. at 131 (quotation omitted).

[¶17] In reaching our decision, we considered whether RSA 356-B:20, I, requires units shown on a site plan outside convertible land to be substantially complete prior to the creation of a condominium. Id. at 133. Specifically, we considered the aforementioned phrase in RSA 356-B:20, I, that provides that a registered land surveyor "shall certify that all units or portions thereof depicted on any portion of the submitted land other than within the boundaries of any convertible lands have been substantially completed." Id. We concluded that, when reading this provision within the context of the statute as a whole, its plain meaning "does not require a surveyor to certify that all units are substantially completed prior to the creation of the condominium. Rather, it

6

requires a surveyor to certify that all units are substantially completed to the extent depicted in the submitted plans." Id. (quotation omitted).

[¶18] Here, to convert convertible land, the declarant was required to "record new site plans of survey conforming to the requirements of paragraph I." RSA 356-B:20, III. As we said in Monument Garden, the land surveyor was only required to "certify that all units are substantially completed to the extent depicted in the submitted plans." Monument Garden, 170 N.H. at 133 (quotation omitted) (emphasis added). The site plan that the declarant submitted in 2010 stated that Building C was "to be constructed," thus indicating that Building C was not substantially complete. (Capitalization omitted.) Therefore, the surveyor could not have certified on the 2010 site plan that Building C was substantially complete, nor was the surveyor required to do so for the site plan to satisfy RSA 356-B:20, I.[1]

[¶19] The Association argues that reliance on Monument Garden is "misplaced" because Monument Garden "did not involve convertible land, but was a phased development." Although we agree that Monument Garden did not involve convertible land, we disagree that this distinction renders our analysis of RSA 356-B:20, I, inapposite to the case at hand. See Monument Garden, 170 N.H. at 127-28, 133-34. The Association's argument that conversion requires substantial completion is grounded in the same language in RSA 356-B:20, I, that we interpreted in Monument Garden. Id. at 133. Whether the site plan is submitted at the time the condominium is established, as was done in Monument Garden, or is submitted at the time of conversion, as was done here, does not impact our interpretation of this provision. See id. at 126.

[¶20] The Association also argues that permitting a developer to convert land without a build requirement violates the Act's purpose "to protect the reasonable expectations of unit owners and prospective unit owners." The Association contends that such an interpretation does not protect the reasonable expectations of the unit owners because "in all such instances of the use of convertible land, the owners had and have a reasonable expectation that convertible land shall be used and units built or at least substantially completed within the five or ten year time frame." We disagree.

---

[1] The Association argues that RSA 356-B:16, I-a, which was added after our decision in Monument Garden, lends support for its interpretation because it "requires any such phased association to abide by the time limits for construction set by the convertible land or expandable land provisions of the Act." RSA 356-B:16, I-a provides that "[a]ll lands within the declaration of the condominium which are within the original bounds of the condominium shall be identified therein as individual units, common areas, limited common areas, convertible spaces, or convertible lands. All lands proposed for possible future expansion shall be identified as expandable lands." RSA 356-B:16, I-a simply instructs a developer to identify land within the bounds of the condominium and does not impose any build deadline.

[¶21] Our interpretation is consistent with other provisions of RSA chapter 356-B that contemplate future development in condominium associations. See RSA 356-B:7 ("No condominium instruments shall be recorded unless all units located or to be located on any portion of the submitted land, other than within the boundaries of any convertible lands, are depicted on site plans and floor plans that comply with RSA 356-B:20, I and II." (emphasis added)); Monument Garden, 170 N.H. at 131 (explaining that, pursuant to the plain language of RSA 356-B:7 and RSA 356-B:20, I, "the Act provides for the creation of a condominium that includes planned future development but does not contain convertible land"). Indeed, we have explained that allowing for future development is consistent with the Condominium Act's purpose:

> The plain language of [RSA 356-B:7 and RSA 356-B:20] indicates that they are designed to protect the interests of potential condominium unit owners — particularly, by ensuring that they are apprised of the details of the planned development. Interpreting the Act as allowing for the creation of a condominium that includes planned future development but does not contain convertible land has no effect on this purpose; so long as the site and floor plans depict the requisite information, potential unit owners will be fully informed.

Monument Garden, 170 N.H. at 133-34 (quotation and citation omitted).

[¶22] Similarly, our conclusion that the Act allows a developer to convert convertible land without substantially completing physical construction does not affect the Act's purpose to ensure that unit owners are apprised of the details of future development, so long as the "appropriate instruments" required for conversion are timely recorded and provide the requisite information. RSA 356-B:23. Indeed, when a developer creates a condominium, it must denote convertible land on the site plan, and within five to ten years of the date of the original declaration, convert such land by filing an amended declaration, site plans, and floor plans. See RSA 356-B:16, II; RSA 356-B:23. Thus, unit owners are informed that a condominium contains convertible land and, five to ten years after the recordation of the declaration, are informed as to how the declarant will use the convertible land. See RSA 356-B:16, II; RSA 356-B:23. The conversion deadline in RSA 356-B:23, III, therefore, is a notice deadline by which the declarant must define how it plans to use convertible land and make such information public. If the legislature had intended this provision to include a build requirement, it would have plainly stated so. See Petition of Carrier, 165 N.H. 719, 721 (2013) ("We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did

not see fit to include.").  However, should the legislature disagree with our interpretation, it is, of course, free to amend the Act as it sees fit.[2]

[¶23] Lastly, the Association argues that the declarant did not satisfy the requirements of RSA 356-B:20, III because it recorded an "old, original site plan," rather than a new site plan, and did not file any floor plans for Building C.  Regarding the site plan, the Association contends that an "updated, more accurate site plan must be filed for land to be considered converted."  See RSA 356-B:20, III ("When converting all or any portion of any convertible land . . . the declarant shall record new site plans of survey conforming to the requirements of paragraph I." (emphasis added)).  The declarant recognizes that the original 2005 site plans and the 2010 site plan are similar, but argues that the 2010 site plan is nevertheless "new" because it was certified and filed in April 2010 and Building C is marked differently to reflect the conversion.  We agree with the declarant that it filed a new site plan in 2010 when it filed its amended declaration, and we see no problem with the fact that the site plan is similar to the plans filed in 2005 so long as the new site plan comports with the requirements set forth in RSA 356-B:20, I.

[¶24] Regarding the floor plans, the Association argues that the declarant did not file, nor could it have filed, floor plans for Building C because Building C did not exist at the time of conversion.  See RSA 356-B:20, II, III.  The Association contends that without floor plans, the declarant failed to submit all "appropriate instruments" required for conversion.  See RSA 356-B:23, I; RSA 356-B:20, III.  The declarant acknowledges that it did not file floor plans for Building C but argues that floor plans are required only for "structures on the land being converted," and since there were no structures on the declarant's convertible land, no floor plans were necessary.  We agree with the declarant.

[¶25] RSA 356-B:23, I, provides that "conversion shall be deemed to have occurred at the time of the recordation of appropriate instruments pursuant to paragraph II and RSA 356-B:20, III." (Emphasis added.)  In turn, RSA 356-B:20, III provides that when converting convertible land, "the declarant shall record, with regard to any structures on the land being converted, or added, either floor plans conforming to the requirements of paragraph II, or

_____

[2] Following our decision in Monument Garden in 2017, the legislature enacted several amendments to RSA chapter 356-B, some of which appear to address our decision in Monument Garden.  See Laws 2018, 192:1, 3.  For example, in Monument Garden, we defined the term "improvement" as used in RSA 356-B:20, I, to include a "unit," but the legislature subsequently amended RSA 356-B:3 to define "improvement" to expressly exclude condominium units. Monument Garden, 170 N.H. at 131-32; Laws 2018, 192:1.  The legislature did not, however, amend RSA 356-B:20, I, or make any other changes to the Act regarding a substantial completion requirement that would affect our holding in Monument Garden.  See Laws 2018, ch. 192.  The fact that RSA 356-B:20 has not been amended following Monument Garden, despite amendments to other provisions of RSA chapter 356-B, is evidence that our interpretation of RSA 356-B:20 conforms with the legislature's intent.  See Brady v. Sumski, Chapter 13 Tr., 176 N.H. 165, 171 (2023).

9

certifications, conforming to the certification requirements of said subsection, of floor plans previously recorded pursuant to RSA 356-B:21." RSA 356-B:20, III (emphasis added); see also RSA 356-B:20, II ("There shall also be recorded, simultaneously with the declaration, floor plans of every structure which contains or constitutes all or part of any unit or units, and which is located on any portion of the submitted land other than within the boundaries of any convertible lands." (emphasis added)). According to the plain language of RSA 356-B:20, III, therefore, floor plans are required only for a structure that exists on the land being converted. As Building C did not exist as a structure at the time of conversion, the declarant was not required to submit floor plans at that time. See RSA 356-B:20, III.

B. Interpretation of the Declaration

[¶26] In the alternative, the Association argues that regardless of whether construction is statutorily required, the express terms of the declaration obligated the declarant to exercise its right to build Building C within five years. The Association points to section 14 of the declaration, titled "Convertible Land," that provides:

> The Declarant for itself and its successors in interest and assigns, reserves the right in its sole discretion and option, for a period of five years from the date of recording of this Declaration in the said Registry of Deeds to create and build an additional building, designated as Building C, which will contain no more than 13 condominium units, on the convertible land delineated and set forth in the Site Plan . . . .

(Emphasis added.) The Association contends that because the declaration "is a contract that binds all involved," the declarant "should be held to his written word."

[¶27] Resolving whether the declaration in the case at hand obligated the declarant to exercise its right to "build" Building C within five years from the date of recordation requires us to interpret the declaration. "A condominium association's legal documents are a contract that governs the legal rights between the association and property owners." Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 575 (2004). "As is the case with any contract, the interpretation of a condominium's declaration is a question of law, which we review de novo." Id. We interpret condominium declarations by reading the entire document as a whole, and affording the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated. Ryan James Realty, 153 N.H. at 197. Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract. Id.

10

[¶28] The declarant's right to build Building C is grounded in two locations: RSA chapter 356-B and the declaration.  In the declaration, the declarant reserved the right to build Building C on convertible land "for a period of five years from the date of recording of this Declaration."  The reservation of this right, however, does not waive or otherwise negate the declarant's statutory right to convert convertible land within five or ten years, which, once exercised, reserves the declarant's right to build upon the convertible land without time limitation.  See Pine Gravel, Inc. v. Cianchette d/b/a Site Prep., 128 N.H. 460, 465 (1986) ("A waiver requires an actual intention to [forgo] a known right.  Such a waiver should not be presumed; a clear expression of intent to waive the right must exist." (citation omitted)).  Therefore, even if the declarant's right to build Building C expired under the declaration, the declarant nevertheless retained its statutory right to build Building C upon conversion.  See RSA 356-B:23.

### III.    Conclusion

[¶29] For the foregoing reasons, we conclude that the declarant properly exercised its right to convert in 2010 when it filed the amended declaration and the new site plan and that it was not required to substantially complete Building C prior to conversion.  See RSA 356-B:23, :20.  Accordingly, we reverse.

Reversed.

HANTZ MARCONI and COUNTWAY, JJ., concurred.

11